No. 71,585

In the Matter of the Adoption of S.E.B. and K.A.B,
Minors.
(891 P.2d 440)

Opinion filed March 10, 1995.

*Robert L. Pottroff*, of Myers, Pottroff & Ball, of Manhattan, argued the cause and was on the brief for appellant natural father.

*Robert S. Jones*, of Norton, Wasserman, Jones & Kelly, of Salina, argued the cause, and *Robert A. Martin*, of the same firm, was with him on the brief for appellee adoptive father.

The opinion of the court was delivered by

LOCKETT, J.: The father of two minor children appeals the district court's order granting the adoption of the children by their stepfather because the father had failed or refused to assume the duties of a parent for two consecutive years prior to the filing of the petition. K.S.A. 59-2136(d). The case was transferred to this court pursuant to K.S.A. 20-3018(c). For the sake of clarity and compliance with Supreme Court Rule 7.043 (1994 Kan. Ct. R. Annot. 42), the children are referred to by their initials and the

parties to the adoption proceeding are referred to by their relation to the children.

Following an acrimonious confrontation with Father, Mother canceled a scheduled visitation by Father with the children. The petition for adoption was filed three days later on October 1, 1993.

Stepfather's petition to adopt S.E.B., born October 24, 1984, and K.A.B., born March 24, 1986, stated that S.E.B. and K.A.B. had resided with Stepfather since his marriage to Mother, a period of over four years. It alleged that Father had wholly failed and refused to contribute in any way to the support of S.E.B. and K.A.B. or otherwise assume any of the duties of a parent for a period of more than two years. The petition asserted that Father's consent to the adoption was not required. On the same day the petition was filed, Mother filed her consent to the adoption. Father objected to the adoption of the children.

At the hearing Father argued that because he was imprisoned for seven months of the two-year period immediately prior to the filing of the petition for adoption, K.S.A. 59-2136(d) did not apply. Prior to being incarcerated, Father had lived in Wichita, Kansas. After his release from prison, Father moved to Abilene, Kansas, and immediately became involved with the children. The judge found that Father's consent was not necessary because Father had failed or refused to assume the duties of a parent for two years prior to the adoption. The judge granted Stepfather's petition for adoption.

In his memorandum decision, the judge noted that when Father and Mother were divorced in 1987, an order was entered requiring Father to pay child support of $150 per month. The judge observed that the support order had not been modified and that Father's total support obligation due October 1, 1993, totalled $10,050, without interest. The judge acknowledged that while on parole in August of 1988, Father had participated in a work release program through the Department of Corrections. In order to participate in the program, Father had to allow the Secretary of Corrections to withhold any support that he was obligated to pay. As a result, Mother received support payments of

$150 for the months of April, May, and June 1988. After Father was released from parole in August 1988, Mother received only one additional support check in the amount of $100.

To explain why he had failed to pay the child support ordered by the court, Father claimed that in August 1988 Mother had agreed to accept no support for the children in exchange for Father's reduced visitation. The judge did not believe Father's explanation for his failure to pay support and found that in December 1988, at Father's request, the parties agreed to reduce the support obligation from $150, as ordered by the court, to $75. In exchange for the reduction of child support, Father agreed to give up overnight and extended visitation in Wichita, Kansas, with the children. The judge noted that the original support order was never modified. From August 1988 until Stepfather filed the petition for adoption on October 1, 1993, Father had not made support payments as ordered or at the reduced rate as agreed. The judge found that Father had worked for the majority of the two-year period from October 1, 1991, through September 30, 1993, and during that period Father had been financially able to pay child support. The judge concluded that the agreement to reduce the child support indicated Father's "total lack of concern for the children—money being more important than visits with the children."

The judge noted that Father had a long history of legal problems. In 1984, Father had been convicted of theft in Morris County and granted probation. Father was later convicted of theft in Dickinson County, Kansas, in November 1986. The judge observed that Father's probation was revoked and he was imprisoned in February 1993 and remained in prison until his parole in August 1993. The judge observed that Mother had allowed visitation when requested by Father and had not tried to cut Father out of the children's lives. The judge noted that there had been extensive visits by the children with Father's parents and Father's sister, who lived in Abilene. The judge found that Father had showed little or no interest in the children for the five years preceding the adoption petition.

The judge observed that Stepfather and Mother had provided the sole financial support for the children since their marriage.

The judge found that Stepfather was a farmer, of good moral character, and financially able to support, educate, and provide a stable family relationship for the children. The judge found that Stepfather had a close relationship with the children and participated in school functions and the children's church life. The judge concluded that Stepfather was a fit person to adopt the children and it was in the best interests of the children to grant the adoption.

## History of Statute

Prior to its repeal in 1990, K.S.A. 1986 Supp. 59-2102(a)(3) provided that consent to an adoption of any minor child could be given by "one of the parents, if the other has failed or refused to assume the duties of a parent for two consecutive years." In 1982, 59-2102 was amended to add subsection (b), which expressly allowed the court to disregard incidental visitations, contacts, communications, or contributions in determining whether a parent's consent was required. L. 1982, ch. 182, § 136.

After the enactment of the Kansas Adoption and Relinquishment Act, K.S.A. 59-2111 *et seq.*, in 1990, K.S.A. 1990 Supp. 59-2136(d) required the consent of the father in a stepparent adoption "unless such father has failed or refused to assume the duties of a parent for two consecutive years." The statute included language providing that "the court may disregard incidental visitations, contacts, communications or contributions" in determining whether a father's consent is required. In 1991, 59-2136(d) was amended to require the relevant period of two consecutive years to be "next preceding the filing of the petition for adoption" and to add a rebuttable presumption that the father has failed or refused to assume the duties of a parent if he has knowingly failed to provide a substantial portion of the child support as required by judicial decree, when financially able to do so, during the two-year period. L. 1991, ch. 167, § 1.

As it presently exists, K.S.A. 59-2136(d) provides:

"In a stepparent adoption, if a mother consents to the adoption of a child who has a presumed father under subsection (a)(1), (2) or (3) of K.S.A. 38-1114 and amendments thereto, or who has a father as to whom the child is a legitimate child under prior law of this state or under the law of another jurisdiction, the

consent of such father must be given to the adoption unless such father has failed or refused to assume the duties of a parent for two consecutive years next preceding the filing of the petition 'for adoption or is incapable of giving such consent. In determining whether a father's consent is required under this subsection, the court may disregard incidental visitations, contacts, communications or contributions. In determining whether the father has failed or refused to assume the duties of a parent for two consecutive years next preceding the filing of the petition for adoption, there shall be a rebuttable presumption that if the father, after having knowledge of the child's birth, has knowingly failed to provide a substantial portion of the child support as required by judicial decree, when financially able to do so, for a period of two years next preceding the filing of the petition for adoption, then such father has failed or refused to assume the duties of a parent."

Although each of the parties cite numerous cases, only two of the cases have facts somewhat similar to this case. In the case of *In re Adoption of F.A.R.*, 242 Kan. 231, 747 P.2d 145 (1987), the stepfather appealed the district court's denial of his petition to adopt his stepchildren, age 9 and age 7. The stepfather had alleged in the petition for adoption that the father had failed or refused to assume the duties of a natural parent for two consecutive years. See K.S.A. 1986 Supp. 50-2102(a)(3). The father in late 1959, had been convicted of rape, aggravated burglary, and attempted rape and was sentenced to a prison term of 45 years to life. From December 1979 until the date of the hearing on the petition for adoption, the father was confined at the Kansas State Industrial Reformatory (K.S.I.R.) at Hutchinson. The father was not eligible for parole until 1994.

The *F.A.R.* court noted that the children and their mother regularly visited the father at K.S.I.R. until June 1981, when the mother terminated the visitations. On July 31, 1981, she filed for a divorce, which was granted October 14, 1981. Sole custody, care, and control of the two children was given to the mother, subject to reasonable visitation rights of the father. No order was made for the father to pay child support. In late 1981, the father's motion seeking specific visitation rights was granted as to the older child. The father's last contact with either child was January 20, 1982. After January 1982, the mother refused to force the children to visit their father in prison. After the mother remarried, the stepfather filed a petition to adopt the children. The trial court

found the stepfather failed to meet his burden of proof that consent was not required on the ground that the father had failed or refused to assume the duties of a parent for two consecutive years pursuant to K.S.A. 1986 Supp. 59-2102(a)(3).

In determining whether the father had failed or refused to assume the duties of a parent for two consecutive years, the *F.A.R.* court observed that the best interests of the child, which is the paramount consideration in custody matters, was not controlling in determining the statutory issue of whether a natural parent has failed to assume parental duties. The court had no doubt that the best interests of the children weighed heavily in favor of the adoption. The *F.A.R.* court noted that it was unfortunate that the father had little concern for the children's welfare and had chosen to stand upon his legal rights, but that under our statutory scheme of adoption he had that choice. Citing *In re Adoption of Wilson,* 227 Kan. 803, 806, 610 P.2d 598 (1980), the court observed that the fitness of the nonconsenting parent was not a controlling factor under K.S.A. 1986 Supp. 59-2102(a)(3) as it would be in a proceeding to sever parental rights pursuant to K.S.A. 38-1581 *et seq.* 242 Kan. at 235.

The *F.A.R.* court noted that in considering whether a nonconsenting parent has failed to assume his or her parental duties for two consecutive years, all the surrounding circumstances must be considered. It pointed out that when a nonconsenting parent is incarcerated and unable to fulfill the customary parental duties of an unrestrained parent, the court must determine whether such parent has pursued the opportunities and options which may be available to carry out such duties to the best of his or her ability. It noted that a parent imprisoned for a long term cannot provide the customary parental care and guidance ordinarily required. It observed that if an imprisoned parent has made reasonable attempts to contact and maintain an ongoing relationship with his or her children, it is for the trial court to determine the sufficiency of such efforts in making a determination under K.S.A. 1986 Supp. 59-2102(a)(3). 242 Kan. at 236. The *F.A.R.* court affirmed the decision of the trial court denying the stepfather's petition to adopt.

In *In re Adoption of Baby Boy S.*, 16 Kan. App. 2d 311, 822 P.2d 311 (1991), the Court of Appeals considered the district court's application of K.S.A. 1990 Supp. 59-2136(h)(4) in granting the stepfather's petition for adoption and terminating the father's rights for failure without reasonable cause to provide support for the mother during the six months prior to the child's birth. The father was incarcerated from August 1990 until the birth of Baby Boy S. in February 1991. The father claimed that his incarceration prevented him from supporting the mother. The *Baby Boy S.* court noted that the district court when granting the adoption found that the father had shown a complete disregard for the child and had refused to support the mother before his incarceration. The court held that the father's unwillingness to support his children before he was incarcerated was a factor the district court could consider and upheld the adoption. 16 Kan. App. 2d at 313-14.

Both *F.A.R.* and *Baby Boy S.* preceded the enactment of K.S.A. 59-2136. K.S.A. 59-2136(d) creates a rebuttable presumption that the father has failed or refused to assume the duties of a parent "if the father, after having knowledge of the child's birth, has knowingly failed to provide a substantial portion of the child support as required by judicial decree, when financially able to do so, for a period of two years next preceding the filing of the petition for adoption." The facts in *F.A.R.* and *Baby Boy S.* greatly differ. In *F.A.R.*, the children were 9 and 7 years of age. There was no evidence that a continued relationship with the father would harm the children. In *Baby Boy S.*, the father had refused to support the mother during her pregnancy and to support the child after its birth. The child was neither aware of nor had bonded with the father.

### Seven-Month Period of Incarceration

Father contends that the K.S.A. 59-2136(d) presumption does not apply because he was incarcerated for seven months of the two-year period and was not financially able to make the child support payments as ordered in the divorce decree. Stepfather argues that under Father's interpretation of the statute, a person

who was not financially able to pay the ordered support for even one month while incarcerated would negate the applicability of the statute.

Generally speaking, adoption statutes are strictly construed in favor of maintaining the rights of natural parents in those cases where it is claimed that, by reason of a parent's failure to fulfill parental obligations as prescribed by statute, consent to the adoption is not required. In making a determination in an adoption proceeding of whether a nonconsenting parent has failed to assume his or her parental duties for two consecutive years, all the surrounding circumstances are to be considered. Although a child can be adopted without the consent of one of the natural parents, the facts warranting an exception as prescribed by statute must be clearly proven. *In re Adoption of F.A.R.*, 242 Kan. 231, Syl. ¶¶ 5, 6, and 10; see *In re Adoption of B.C.S.*, 245 Kan. 182, Syl. ¶ 1, 777 P.2d 776 (1989).

When a nonconsenting parent is incarcerated and unable to fulfill the customary parental duties required of an unrestrained parent, the court must determine whether such parent has pursued the opportunities and options which may be available to carry out such duties to the best of his or her ability. The judge noted Father's history of legal problems and his failure to pay support as ordered prior to being incarcerated. The district judge found that in addition to his failure to pay child support, Father had not made reasonable attempts to contact and maintain an ongoing relationship with his children during the time of his incarceration. The judge then contrasted the support and stable lifestyle of Stepfather and Mother to that of Father and determined that it was in the best interests of the children that the adoption be granted.

We note that the children were 7 and 9 years of age when the petition for adoption was filed. Unlike *Baby Boy S.*, the children are of the age where they are well aware of their father and their father's family. The evidence is that the children had contact with Father until his incarceration and that the children were involved with Father's parents and his sister prior to and subsequent to his incarceration. There is no evidence or findings by the judge

that the children would be mentally or physically harmed by continued contact with Father and his family.

There is no doubt that the children are receiving the benefits of the care and support of a more stable home with Stepfather and Mother. There is substantial evidence to support the trial court's determination that it was in the best interests of the children that they remain in the home of Stepfather. The best interests of the children, however, is not the standard in deciding this adoption. The best interests of the children, which is the paramount consideration in custody matters, is not controlling in determining the statutory issue of whether a natural parent has failed to assume parental duties.

The question in this case is whether the statute requires that a parent be financially able to pay the ordered support for the two-year period before the presumption is applicable. K.S.A. 59-2136(d) creates a rebuttable presumption that a father has failed or refused to assume the duties of a parent "if the father, after having knowledge of the child's birth, has knowingly failed to provide a substantial portion of the child support as required by judicial decree, when financially able to do so, for a period of two years next preceding the filing of the petition for adoption." To apply the statutory presumption of K.S.A. 59-2136(d), the courts are required to take into consideration the period of time that the father was incarcerated and unable to support the children.

Here, Father was incarcerated for 7 of the 24 months, approximately 30% of the two-year period. It is obvious from the facts that while in prison Father was not financially able to support the children. Because the fitness of the nonconsenting parent and the best interests of the children are not controlling factors under K.S.A. 59-2136(d), we must find that under the circumstances the judge improperly granted the adoption.

Reversed.