(953 P.2d 1387)
No. 79,255

In the Matter of the Adoption of A.J.P., a Minor Child.

Opinion filed February 20, 1998.

John R. Kurth, of Garrity, Kuckelman & Kurth, of Atchison, for appellant.

Patrick E. Henderson, of Duncan-Senecal Law Offices, Chtd., of Atchison, for appellee.

Before BRAZIL, C.J., ROYSE and GREEN, JJ.

BRAZIL, C.J.: D.C., the natural father of A.J.P., appeals the termination of his parental rights incident to an adoption petition filed by A.J.P.'s stepfather.

We affirm.

G.L.S. and D.C. were involved in 1990 when G.L.S. became pregnant. G.L.S. learned that she was pregnant with A.J.P. after the couple had broken up. D.C. was made aware of the pregnancy before the child was born, but he did nothing financially or otherwise to support G.L.S. through her pregnancy. After A.J.P.'s birth on June 22, 1991, a paternity case was filed in which D.C.

was ordered to pay child support. He later filed a petition to establish visitation and, for approximately 3 to 6 months, exercised visitation on a regular basis. He has never paid any child support.

When A.J.P. was approximately 14 months old, D.C. was incarcerated and has remained in custody for the last 5 years of A.J.P.'s life. He will not be eligible for release on his current sentence until December 1999.

The stepfather, N.J.S., had been in a relationship with A.J.P.'s natural mother for approximately 2½ years at the time of the hearing. A.J.P. had lived in the same house with the stepfather for that entire period. N.J.S. supported the child financially throughout that time and has been the only father figure the child recognizes.

The trial court concluded that D.C. had failed or refused to assume the duties of a parent for the 2 years next preceding the petition in this matter. The court further concluded that, pursuant to K.S.A. 59-2136(d), his consent was unnecessary.

In an adoption proceeding, the consent of both parents is required unless the court makes a specific finding that the consent of one is not required. K.S.A. 59-2129(a)(2); *In re Adoption of C.R.D.*, 21 Kan. App. 2d 94, 97, 897 P.2d 181 (1995). In the instant case, involving stepparent adoption, the natural father refused to consent to the adoption.

K.S.A. 59-2136(d) provides:

"(d) In a stepparent adoption, . . . the consent of such father must be given to the adoption unless such father has failed or refused to assume the duties of a parent for two consecutive years next preceding the filing of the petition for adoption or is incapable of giving such consent. In determining whether a father's consent is required under this subsection, the court may disregard incidental visitations, contacts, communications or contributions. In determining whether the father has failed or refused to assume the duties of a parent for two consecutive years next preceding the filing of the petition for adoption, there shall be a rebuttable presumption that if the father, after having knowledge of the child's birth, has knowingly failed to provide a substantial portion of the child support as required by judicial decree, when financially able to do so, for a period of two years next preceding the filing of the petition for adoption, then such father has failed or refused to assume the duties of a parent."

Whether a parent has refused or failed to assume his or her duties for the 2 years prior to the filing of an adoption petition is

a question of fact, which is reviewed by this court only to determine whether the decision is supported by substantial and competent evidence presented at a full and complete hearing of the matter. This court will not reweigh evidence or pass on the credibility of witnesses, but will only review the facts as presented, in the light most favorable to the party prevailing below, to determine whether the decision of the trial court is properly supported by the testimony and other evidence. See *Aslin v. Seamon*, 225 Kan. 77, 78, 587 P.2d 875 (1978). Whether the contacts between the natural parent and the child are incidental such that the contacts may be disregarded is to be reviewed on a case by case basis. *In re C.R.D.*, 21 Kan. App. 2d at 100.

In a situation where a natural parent is incarcerated, different standards must be applied than when the natural parent is free from such constraints. *In re Adoption of F.A.R.*, 242 Kan. 231, 236, 747 P.2d 145 (1987). The trial court must consider whether the parent has made reasonable attempts, under all the circumstances, to maintain a close relationship with his or her child, and whether those attempts are sufficient to require the parent's consent be given to an adoption. 242 Kan. at 236. In the instant case, the trial court found that the efforts made were insufficient to require D.C.'s consent to the adoption of A.J.P.

D.C. maintains that the trial court's finding of his failure to act as a father for the 2 years next preceding the filing of this adoption petition was error, and that the finding is not supported by the evidence. In support of this contention, the natural father cites *In re Adoption of S.E.B.*, 257 Kan. 266, 891 P.2d 440 (1995), for the proposition that his incarceration creates an exception to the statutory requirements of his parental responsibilities. This contention is contrary to the language and spirit of both K.S.A. 59-2136(d) and the Supreme Court's holding in *S.E.B.*

In *S.E.B.*, as here, the natural father was incarcerated for at least a portion of the 2 years preceding the filing of the adoption petition. In both cases, there was a failure by the father to provide court-ordered child support when the father was financially able to do so. However, the facts of *S.E.B.* and the case at bar differ in the quality of the relationship between the child and the parent.

In *S.E.B.*, the children were ages 7 and 9 when their father was incarcerated, and he was incarcerated for only 7 months of the 2 years next preceding the adoption petition filing date. The Supreme Court noted that the relationship with the father and the father's family in *S.E.B.* continued after the father was incarcerated, and the children had a well-developed relationship with the father and his extended family. The facts of the instant case differ greatly in this regard. First, at the time of the hearing, the natural father of A.J.P. had been incarcerated for 4 of the child's 5 years. He will not be eligible for release until the child is 9 years old. While there is evidence in the record that he exercised his visitation rights in a limited manner before his incarceration, there is no developed relationship between the father and child in this case. The natural father's family made one effort to contact the child after the natural father was incarcerated. No visitation was established. That contact was 3 years prior to the filing of the adoption petition. None of the parties believed that the child would recognize either her natural father or his relatives were she to see them.

The trial court found that these contacts were "incidental" such that they were not evidence of a close enough relationship between the natural father and A.J.P. to require the natural father's consent to the adoption proceeding. We review this finding of fact and conclusion of law only to determine whether substantial evidence exists to support the finding. See *Tucker v. Hugoton Energy Corp.*, 253 Kan. 373, 377, 855 P.2d 929 (1993).

In the instant case, D.C. neither contacted nor attempted to contact his child in any meaningful sense. He claimed in a letter introduced into evidence that he loved his child and that she was one of the few things that kept him alive through his incarceration. However, his actions fail to support this contention as there were no letters, no telephone calls, no birthday cards, or any other contact between this father and his child. He also never provided any financial support to his child, even before he was incarcerated, except for approximately $30 worth of clothing and diapers he claimed to have purchased when the child was an infant.

While D.C. did exercise some limited visitation with the child before his imprisonment, he wholly failed to maintain any contact

after that time. Certainly, there was no evidence of any attempt to contact the child within the 2 years immediately preceding the adoption petition. The trial court's finding that the natural father failed to avail himself of the opportunities he did have for maintaining a relationship with his child is supported by the evidence presented at the hearing.

Upon review of all the evidence, viewed in the light most favorable to the adoptive father who prevailed in the trial court, there is sufficient evidence to support the trial court's finding that D.C.'s consent to the adoption of A.J.P is unnecessary.

Affirmed.