(12 P.3d 916)
No. 84,548

IN THE MATTER OF THE APPLICATION TO ADOPT H.B.S.C.
S.C.R., *Appellee*, v. C.L.C., *Appellant*.

Opinion filed November 9, 2000.

*Paul E. Dean*, of Sherman & Dean, of Emporia, for appellant.

*Wallace F. Davis*, of Davis & Manley, of El Dorado, for appellee.

Before RULON, P.J., ROGG, S.J., and BARRY A. BENNINGTON, District Judge, assigned.

RULON, J.: The natural father of H.B.S.C. (child) appeals the district court's order that his consent to adoption was not required under K.S.A. 59-2136(d) in the adoption of the child by the child's stepfather. We affirm in part and reverse in part.

This is a stepparent adoption case. The minor child was born on November 23, 1993, in El Dorado. The natural father, C.L.C., was not married to the natural mother, S.L.R., but he provided $300 for support during her pregnancy. In May 1995 the father assaulted the mother because she would not stay and talk to him during the visitation with the child. This incident resulted in a no contact order issued against the father. The father was ordered to pay $170 a month for child support on October 5, 1995. On December 16, 1995, the natural mother married S.C.R., the petitioner in this stepparent adoption proceeding. On February 5, 1996, the father was incarcerated in Oklahoma for armed robbery and assault and battery and he was scheduled to be released by the end of 1999. Although the father received $30 a month while he was on the work release program, he did not pay any child support.

During his incarceration, the father tried to maintain a relationship with his child by writing letters. The prison log showed 21 entries for a 6 months' period that the father sent letters addressed to the child and the mother. The mother testified that only seven letters were addressed to the child and the rest to either her or to both. The mother further testified she never read the letters to the child because "she was too young and it would only confuse her." Some letters stated: "Stacy, I will love you until the end of time" and "I still love your mother. I always will love her, but I know your mother just wants to go on with her life and forget all about me and I don't blame her for that." The jailer in Oklahoma testified

the father had talked to him about the child, showing "deep concerns for her or fondness."

On May 13, 1998, the stepfather filed a petition for adoption with consent of the natural mother in the Magistrate Court of Greenwood County. The natural father did not give consent to the adoption. On July 1, 1998, the magistrate judge ordered an appointment of counsel for the natural father. A hearing was conducted with the natural father participating by telephone. The magistrate judge heard the evidence and the arguments by counsel, and held that

"pursuant to K.S.A. 59-2136, the natural father of the minor child, [C.L.C.] after knowledge of the child's birth has knowingly failed, neglected and refused to assume the duties of a parent and has failed, neglected and refused to provide a substantial portion of the child's support, required by judicial decree, and when financially able to do so, for the two (2) year period next preceding the filing of the Petition herein."

The natural father filed a notice of appeal to the district court and a hearing was held with the additional testimony of the parties, briefs, and arguments by counsel. The district court found that the natural father failed or refused to assume his parental duties of financial support or emotional support, love, and affection for 2 years next preceding the filing of the petition for adoption. The district court further found the natural father failed to maintain a close relationship with the child even with the limitations placed on him by incarceration. The district court held the consent by the natural father was not required for the adoption of the child by the stepfather.

The natural father filed a notice of appeal on October 28, 1999. On December 29, 1999, the stepfather filed a motion to oppose the appointment of appellate counsel for the natural father. On January 26, 2000, the district court granted the motion, finding the right to appointed counsel under the probate code was a creature of statute and the legislature did not intend appointed counsel to continue to the appellate level. The district court held that appellate counsel would not be appointed and that an appeal bond of $5,000 should be posted by the father. The natural father appeals

from the order granting the adoption by the stepfather, denial of appellate counsel, and the order of a cash appellate bond.

## APPOINTED APPELLATE COUNSEL

The natural father argues the district court erred in not appointing appellate counsel for him in this stepparent adoption case which resulted in termination of his parental rights to his child. The decision to remove appellate counsel was based on the court's interpretation of K.S.A. 59-2136(h), which states:

"When a father or alleged father appears and asserts parental rights, the court shall determine parentage, if necessary pursuant to the Kansas parentage act. If a father desires but is financially unable to employ an attorney, the court shall appoint an attorney for the father. Thereafter, the court may order that parental rights be terminated, upon a finding by clear and convincing evidence, of any of the following: . . . ."

The district court compared the above statutory language with the other statutes dealing with appointed counsel. The statutory provision in a child in need of care proceeding, K.S.A. 1999 Supp. 38-1505, states:

"(b) *Attorney for parent or custodian.* A parent or custodian of a child alleged or adjudged to be a child in need of care may be represented by an attorney, other than the guardian *ad litem* appointed for the child, in connection with all proceedings under this code. If at any stage of the proceedings a parent desires but is financially unable to employ an attorney, the court shall appoint an attorney for the parent.

. . . .

"(d) *Continuation of representation.* A guardian *ad litem* appointed for a child or an attorney appointed for a parent or custodian shall continue to represent the client at all subsequent hearings in proceedings under this code, including any appellate proceedings, unless relieved by the court upon a showing of good cause or upon transfer of venue."

Another statute relied upon by the district court was from the Treatment Act for Mentally Ill Persons. K.S.A. 1999 Supp. 59-2960(a)(3) provides: "Upon the filing of the petition . . . the district court shall issue . . . [a]n order appointing an attorney to represent the proposed patient at all stages of the proceedings and until all orders resulting from such proceedings are terminated."

The district court concluded there is no clear legislative intent for appointment of appellate counsel for indigent parents in adoption proceedings.

The interpretation of a statute is a question of law over which this court has plenary review. *Stafford v. State Farm Mut. Automobile Ins. Co.*, 27 Kan. App. 2d 224, 226, 1 P.3d 924 (2000).

The natural father argues on appeal that the duties of appointed counsel continue until final resolution of the cause, which occurs only after judgment has been rendered and the availability of appeal has been exhausted. The father cites *In re Brehm*, 3 Kan. App. 2d 325, 594 P.2d 269 (1979), for support. In *Brehm*, the trial court terminated a natural mother's parental rights, finding her an unfit person to have custody of her child. At trial, the mother was represented by court-appointed counsel. Although the trial court did find the natural mother to be an indigent person, the court denied her request for appointment of counsel pending appeal. The *Brehm* court concluded:

"The trial judge was technically correct in that there is no specific legislative authority for the appointment of counsel for an indigent person on appeal from an order severing parental rights. However, there is no doubt that the relationship of natural parent and child is a fundamental right of which neither may be deprived without due process of law as guaranteed by the Constitution of the United States and the Kansas Bill of Rights. Nor can there be any doubt that, in such case, the right to counsel, either retained or appointed, is essential to due process." 3 Kan. App. 2d at 326.

Although *Brehm* dealt with the termination of parental rights based on neglect, the same rationale applies to the factual situation in this case. The *Brehm* court concluded:

"[A]bsent a statutory provision to the contrary and absent limitation by the appointing authority, the responsibilities and duties of court-appointed counsel continue until final resolution of the cause for which assigned. Such occurs only after judgment has been rendered, the availability of an appeal has been exhausted, and the time for any rehearing or final review has passed." 3 Kan. App. 2d at 327.

The fundamental principle at the core of parental rights termination cases, either through a child in need of care or an adoption proceeding, is the natural parent's right to be a parent. The United States Supreme Court has "recognized on numerous occasions that

the relationship between parent and child is constitutionally protected." *Quilloin v. Walcott*, 434 U.S. 246, 255, 54 L. Ed. 2d 511, 98 S. Ct. 549, *reh. denied* 435 U.S. 918 (1978). The Kansas courts have likewise consistently held that "child custody is a fundamental right of a parent, protected by the due process clause of the Fourteenth Amendment." *In re Guardianship of Williams*, 254 Kan. 814, 819, 869 P.2d 661 (1994); see *Sheppard v. Sheppard*, 230 Kan. 146, 153, 630 P.2d 1121 (1981), *cert. denied* 455 U.S. 919 (1982).

Some state courts have determined that an indigent parent is entitled to appointed counsel in stepparent adoption proceedings where there was no express statutory privilege to have appointed counsel. For example, when a trial court denied an indigent father's request for appointed counsel in a contested adoption and entered a judgment of adoption, the appellate court reversed the adoption, stating that the contested adoption proceeding involved state action sufficient to invoke due process concerns. See *Matter of K.L.J.*, 813 P.2d 276 (Alaska 1991); *O.A.H. v. R.L.A.*, 712 So. 2d 4 (Fla. Dist. App. 1998); *Matter of Adoption of K.A.S.*, 499 N.W.2d 558 (N.D. 1993).

Additionally, an equal protection argument was raised by a father in *Zockert v. Fanning*, 310 Or. 514, 520-23, 800 P.2d 773 (1990), where the indigent father was denied assistance of appointed counsel at the hearing. The Oregon Supreme Court reversed, stating that parents are entitled to be treated upon the same terms under the equal privileges and immunities provision of the state constitution. 310 Or. at 523. The *Zockert* court concluded the legislative grant of the opportunity for a parent to benefit from the privilege of assistance by counsel in one mode of termination of parental rights requires that the opportunity to exercise that privilege be extended to all similarly situated parents directly threatened with permanent loss of parental rights. 310 Or. at 523.

A stepparent adoption differs from other parental termination cases because it is not brought by the State; however, such proceedings are not a purely private dispute either. Adoption, not recognized under the common law, is wholly a creature of statute. *Matter of Adoption of K.A.S.*, 499 N.W.2d at 566; *Zockert v. Fanning*, 310 Or. at 517. In order to accomplish an adoption, a legis-

latively created scheme must be followed regarding notice, hearing, consent, and pleadings, whether it is an independent or agency adoption in Kansas. See Kansas Adoption and Relinquishment Act, K.S.A. 59-2111 *et seq.*

Although the Kansas courts have not dealt with the question in the past, the same issue was presented under the similar factual circumstances in *In re Sanchez*, 422 Mich. 758, 375 N.W.2d 353 (1985). In *Sanchez*, the probate court terminated the incarcerated natural father's parental rights, entered an order of stepparent adoption, and denied the father's request for appointment of appellate counsel. The Michigan Court of Appeals held the father had no right to the appointment of appellate counsel but remanded the case to the probate court for the purpose of exercising that court's discretion in determining whether appellate counsel should be appointed to represent the father. On appeal from the denial of appointment of appellate counsel, the Michigan Supreme Court reversed, stating:

"We find that the probate court is authorized to appoint counsel for a nonconsenting noncustodial parent in proceedings brought pursuant to § 51(6) of the Adoption Code. In exercising such discretion, the trial court will be guided by the principle of assuring the nonconsenting parent the ability to present a case properly, measured in the particular case by factors such as the relative strength of the adversaries and the presence or absence of legal, factual, procedural, or evidentiary complexity. [Citation omitted.]

"We further find that where the trial court has determined that trial counsel is necessary to protect the noncustodial parent's interests at the termination proceedings, counsel should also be appointed on appeal, absent some change in circumstances, identified by the trial court, which would justify denial of appellate counsel." 422 Mich. at 770-71.

K.S.A. 59-2136(h) directs the district court to appoint an attorney for the father if he desires but is financially unable to employ an attorney in a contested adoption proceeding. This statute does not limit the appointed counsel to represent the father only at the trial court level. Based on the rationale in *Brehm*, 3 Kan. App. 2d at 327, absent a statutory provision to the contrary, the responsibilities and duties of court-appointed counsel continue until final resolution of the case, including the appeal.

There is a strong public policy argument which supports the availability of appellate counsel for indigent persons. When an indigent parent facing the termination of parental rights in a child in need of care proceeding is entitled to appointed appellate counsel but is not entitled to appointed counsel in a stepparent adoption situation, the procedural differences do not justify the different treatment. In either situation, the parent may face permanent loss of his or her rights to a child.

## THE APPEAL BOND

The district court held an appeal bond of $5,000 was appropriate to cover costs for the appeal in the event the father was unsuccessful. The father argues that termination of his parental rights concerns a fundamental interest and posting of an appeal bond bars his appeal in violation of his due process rights.

K.S.A. 59-2401 provides:

"(a) An appeal may be taken within 30 days from the date of entry of any of the following orders, judgments, decrees and decisions:

. . . .

(23) An order decreeing or refusing to decree an adoption.

. . . .

"(b) Notwithstanding the provisions of K.S.A. 60-2103 and amendments thereto relating to bonds, the appellant, other than the state or municipality or a fiduciary appealing on behalf of the estate, shall file in the court from which the appeal is taken a bond in such sum and with such sureties as may be fixed and approved by the court, conditioned that the appellant will without unnecessary delay prosecute the appeal and pay all sums, damages and costs that may be adjudged against the appellant."

The father argues on appeal the district court's holding here contradicts *M.L.B. v. S.L.J.*, 519 U.S. 102, 136 L. Ed. 2d 473, 117 S. Ct. 555 (1996). In *M.L.B.*, the natural mother filed a timely appeal from the termination decree in a stepparent adoption case, but Mississippi law conditioned her right to appeal on prepayment of record preparation fees estimated to be more than $2,000. The mother applied to appeal *in forma pauperis* but the Mississippi Supreme Court denied her application, holding there is no right

to proceed *in forma pauperis* in civil appeals. The United States Supreme Court stated:

"Choices about marriage, family life, and the upbringing of children are among associational rights this Court has ranked as 'of basic importance in our society,' [citation omitted], rights sheltered by the Fourteenth Amendment against the State's unwarranted usurpation, disregard, or disrespect. [Citations omitted.] M.L.B.'s case, involving the State's authority to sever permanently a parent-child bond, demands the close consideration the Court has long required when a family association so undeniably important is at stake." 519 U.S. at 116-17.

The *M.L.B* Court concluded the State may not "bolt the door to equal justice," in a termination of parental rights case by requiring an appeal bond. 519 U.S. at 124. See *Griffin v. Illinois*, 351 U.S. 12, 24, 100 L. Ed. 891, 76 S. Ct. 585 (1956) (Frankfurter, J., concurring).

The resolution of this issue seems to be closely related to the previous issue of privilege of appointed appellate counsel. If an indigent natural parent should be afforded appointed appellate counsel before parental rights may be severed, then posting of an appeal bond, which practically makes the appeal impossible, runs contrary to the fundamental right to be a parent.

Under the facts of this case, the district court erred when requiring this indigent father to post an appeal bond.

## LACK OF CONSENT

Finally, we must decide if the district court erred when finding the natural father's consent was not necessary under K.S.A. 59-2136(d), which permitted the child to be adopted by the stepfather. K.S.A. 59-2136(d) states:

"In a stepparent adoption, if a mother consents to the adoption of a child who has a presumed father under subsection (a)(1), (2) or (3) of K.S.A. 38-1114 and amendments thereto, or who has a father as to whom the child is a legitimate child under prior law of this state or under the law of another jurisdiction, the consent of such father must be given to the adoption unless such father has failed or refused to assume the duties of a parent for two consecutive years next preceding the filing of the petition for adoption or is incapable of giving such consent. In determining whether a father's consent is required under this subsection, the court may disregard incidental visitations, contacts, communications or contributions. In determining whether the father has failed or refused to assume the duties of a parent for two consecutive years next preceding the filing of the petition

for adoption, there shall be a rebuttable presumption that if the father, after having knowledge of the child's birth, has knowingly failed to provide a substantial portion of the child support as required by judicial decree, when financially able to do so, for a period of two years next preceding the filing of the petition for adoption, then such father has failed or refused to assume the duties of a parent."

Our standard of review is stated in *In re Adoption of K.J.B.*, 265 Kan. 90, 94, 959 P.2d 853 (1998):

"'In an adoption proceeding, the question of whether an individual has failed or refused to assume the duties of a parent for the required period of time pursuant to [K.S.A. 59-2136(d)] is ordinarily a factual one to be determined by the trier of facts upon competent evidence after a full and complete hearing.'" (Quoting *In re Adoption of F.A.R.*, 242 Kan. 231, Syl. ¶ 1, 747 P.2d 145 [1987].)

## Financial Support

The natural father does not dispute that from May 13, 1996, to May 13, 1998, he did not provide monetary support for his child because he was incarcerated during the entire 2-year period. *In re Adoption of S.E.B.*, 257 Kan. 266, 274, 891 P.2d 440 (1995), held that to apply presumption of failure of parental duties, "the courts are required to take into consideration the period of time that the father was incarcerated and unable to support the children." The *S.E.B.* court reversed the granting of the adoption, stating the father was incarcerated for 7 of the 24 months (approximately 30% of the 2-year period) and it "[i]s obvious from the facts that while in prison Father was not financially able to support the children." 257 Kan. at 274.

In *F.A.R.*, the district court denied the petition for stepparent adoption, finding the stepparent failed to meet his burden of proof that consent was not necessary under the statute. The stepparent appealed, arguing the court erred in considering the natural father's incarceration as a factor in determining whether he failed to assume parental duties and in finding the children's mother had interfered with the father's attempts to maintain contact with his sons. Our Supreme Court affirmed the denial of stepparent adoption, stating:

"It is obvious that a parent imprisoned for a long term cannot provide the customary parental care and guidance ordinarily required. If an imprisoned parent

has made reasonable attempts to contact and maintain an ongoing relationship with his or her children, it is for the trial court to determine the sufficiency of such efforts. . . . We hold that it was not error for the trial court to take into consideration the limiting aspects of appellee's confinement in determining whether he had failed to assume his parental duties." 242 Kan. at 236-37.

Here, the district court found it important the father paid no child support after being ordered to do so in October 1995, assuming that he was able to do so until the time he was incarcerated in Oklahoma in February 1996. The father's unwillingness to support his child before he was incarcerated was a factor the trial court could consider. See *In re Adoption of Baby Boy S.*, 16 Kan. App. 2d 311, 313-14, 822 P.2d 76 (1991). The facts show the natural father paid $300 during the mother's pregnancy, but he failed to contribute financially at all after the birth of the child. The father was earning about $30 a month while on a work release program in prison, but he testified he needed the money to buy laundry soap and other hygiene items. K.S.A. 59-2136(d) requires a finding the father failed to support a child "when financially able to do so" in order to form a rebuttable presumption.

When the father is incarcerated and unable to provide financially for the child, the focus of the trial court's inquiry seems to shift to the love and affection side of parenting. Even assuming the father failed to provide financial support for his child, the court's inquiry continues to the emotional support factor. To judicially sever parental rights under K.S.A. 59-2136(d), there must be a failure of both financial and emotional support. See *In re Adoption of K.J.B.*, 265 Kan. at 101-02 (citing *In re Adoption of C.R.D.*, 21 Kan. App. 2d 94, 897 P.2d 181 [1995] [Lewis, J., concurring]).

### Emotional Support

The natural father argues there was more than enough evidence to deny the stepparent adoption. As we understand, the father sent at least 21 letters in a 6-month period to the mother and/or child. The father argues he made a reasonable attempt to maintain a close relationship with the child given the limitations placed on him by incarceration. A trial court must consider whether the parent has made reasonable attempts, under all the circumstances, to main-

tain a close relationship with his or her child, and whether those attempts are sufficient to require the parents' consent be given to an adoption. *In re Adoption of A.J.P.*, 24 Kan. App. 2d 891, 893, 953 P.2d 1387 (1998). Here, the district court found such attempts by the father were insufficient under the *A.J.P.* analysis and any contact between the father and the child were incidental.

"Incidental" has been defined as " 'casual; of minor importance; insignificant; [and] of little consequence.' " *In re Adoption of McMullen*, 236 Kan. 348, 351, 691 P.2d 17 (1984). Here, the district court found the letters from the father contained inappropriate material for the child, citing, *e.g.*: "It is too late for your mother and I," "I know I have made mistakes," "Stacy, I will love you until the end of time." The trial court pointed out that the child's name was misspelled in many of the letters. The district court further found the mother was justified in not reading or showing the letters to the child and concluded the father's correspondence to the child was nothing more than a thinly disguised ruse to keep in the good graces of the mother.

This court will not reweigh evidence or pass on the credibility of witnesses, but will only review the facts as presented, in the light most favorable to the party prevailing below, to determine whether the decision of the trial court is properly supported by the testimony and other evidence. *A.J.P.*, 24 Kan. App. 2d at 893.

Under the facts of this case, the district court did not err when finding the consent of the natural father was not required in this stepparent adoption proceeding.

We affirm in part and reverse in part. Appellate costs and fees and attorney fees shall be considered by this court upon the father's timely application under Rule 7.07 (1999 Kan. Ct. R. Annot. 50).