NOT DESIGNATED FOR PUBLICATION

No. 114,391

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

In the Matter of the Adoption of F.R.-H. and J.R.-H.

MEMORANDUM OPINION

Appeal from Johnson District Court; MICHAEL P. JOYCE, judge. Opinion filed April 29, 2016. Affirmed.

*Richard P. Klein*, of Olathe, for appellant natural father.

*Thomas E. Hammond, II*, of Gates Shields Ferguson Hammond, P.A., of Overland Park, for appellee proposed adoptive stepparent.

Before MCANANY, P.J., PIERRON and SCHROEDER, JJ.

*Per Curiam*:  This is a stepparent adoption case involving F.R.-H and J.R.-H, whom we will refer to simply as the children. The stepfather's efforts to adopt the children involved first terminating the parental rights of J.H., the father of the children. It is the district court's decision to terminate father's parental rights that brings this matter to us. On appeal, father argues that the termination of his parental rights was not supported by sufficient clear and convincing evidence.

Father and the children's mother met in 2004 and moved in together in January 2005. They were never married. Initially they shared living expenses, and father contributed to the rent, utilities, and other household expenses. But in 2009 mother became the sole financial provider for the family, and father stayed home and cared for the children. The family continued to live together until July 5, 2011.

1

On July 5, 2011, in the course of a domestic quarrel, father, in the presence of the children, stabbed mother in the face and neck several times with a knife. The children were ages 5 and 4 at the time. Mother was hospitalized for 3 days. Father fled to Mexico. The State charged him with attempted murder.

Father returned to the United States where he was arrested in Houston, Texas, in March 2012. Father has remained in custody since he was arrested in Texas. He was transported to Jackson County, Missouri, where in October 2012 he pled guilty to reduced charges of felony domestic assault and felony assault with a deadly weapon. He was sentenced to prison and is currently incarcerated at the Western Missouri Correctional Center. He is scheduled to be released in March 2018, but Immigration and Customs Enforcement agents have placed a "hold" on him, and he will be deported to Mexico upon his release from prison.

During the entire time since Father fled to Mexico, he has not sent the children money, support, letters, Christmas or birthday gifts, or Christmas or birthday cards. He has not had members of his family provide money on his behalf to the children. He has had no communication with the children since he fled except on one occasion when he claims he called the children from Mexico. As a result of his attack on the children's mother, the court ordered him to have no contact with mother, but there was no order preventing him from communicating with the children.

After the altercation with father, mother and the children moved in with the maternal grandmother who lived a block away. Father was familiar with where the grandmother lived. Mother stayed with grandmother until August 2012 when she moved in with the children's future stepfather. At all times the maternal grandmother knew where mother and the children were living.

Mother and father did not own a phone when they lived together. They used the children's maternal grandmother's phone. According to mother, the grandmother's phone number had not changed since father fled to Mexico, but father made no attempts to contact the children through that phone number since the attack. According to father, he spoke to the children once by phone from Mexico when he called the maternal grandmother. He contends that he tried to call mother after his arrest, but he only got an answering machine. He made no further efforts to communicate with the children. He claimed that he requested his father, the children's grandfather, to try to find the children, but the grandfather was unsuccessful because the children's mother had moved. According to mother, the grandfather never contacted the children's maternal grandmother in an attempt to locate the children. Father apparently made no attempts to determine the whereabouts of the children by trying further to contact the children's maternal grandmother.

The mother married the children's stepfather in January 2014.

On March 17, 2015, mother's husband filed a petition for a stepparent adoption of both children. Contract information for mother and the children were provided to father as part of the court proceedings, but there was no evidence that father made any effort to contact his children after receiving this information.

At trial, father appeared through his counsel. Father participated by video conference. Both mother and father testified at trial. Father testified that once he is released from prison and deported he plans on finding a job in Mexico in order to provide for his children. He plans to be involved in their lives by talking to them by computer and phone. Assuming father is released from prison in March 2018, the children will be ages 12 and 11. They will not have seen or communicated with their father since ages 5 and 4.

3

The district court took the matter under advisement and ultimately terminated father's parental rights under the provisions of K.S.A. 2015 Supp. 59-2136(h)(1)(B),(C), and (G). Father has appealed, contending there was insufficient evidence to support the court's termination of his parental rights.

When a district court terminates parental rights pursuant to K.S.A. 2015 Supp. 59-2136(h)(1), we review the court's factual findings to determine if, after reviewing the evidence in the light favoring the prevailing party, they are supported by clear and convincing evidence. *In re Adoption of B.B.M.*, 290 Kan. 236, 244, 224 P.3d 1168 (2010). Clear and convincing evidence means that "the truth of the facts asserted is highly probable." *In re B.D.-Y.*, 286 Kan. 686, 697, 187 P.3d 594 (2008).

When determining whether factual findings are supported by clear and convincing evidence, we do not reweigh conflicting evidence, pass on the witnesses' credibility, or redetermine questions of fact. See 286 Kan. at 705-06.

Adoption statutes are strictly interpreted in favor of maintaining the rights of the natural parents when the statutes are being used to terminate the right of a natural parent without consent. *In re Adoption of Baby Girl P.*, 291 Kan. 424, 430, 242 P.3d 1168 (2010). While the Constitution's Due Process Clause protects a parent who assumes parental duties, when a parent does not the Constitution will not protect that parent's biological relationship with the child. *In re Adoption of G.L.V.*, 286 Kan. 1034, 1060, 190 P.3d 245 (2008).

When a nonconsenting parent is incarcerated and therefore unable to fulfill the usual parental duties, the court must decide whether the incarcerated parent has taken advantage of available opportunities to perform parental duties to the best of that parent's ability. *In re Adoption of S.E.B.*, 257 Kan. 266, 273, 891 P.2d 440 (1995). If an incarcerated parent has made reasonable efforts to contact and maintain a continuing

4

relationship with his or her children, it is up to the district court to determine whether such efforts are sufficient. *In re Adoption of F.A.R.*, 242 Kan. 231, 236, 747 P.2d 145 (1987).

Here, the district court relied on K.S.A. 2015 Supp. 59-2136(h)(1)(B), (C), and (G) in finding that the father's rights should be terminated. K.S.A. 2015 Supp. 59-2136(h)(1) allows a district court to terminate parental rights upon a finding of clear and convincing evidence of any of a statutory list of factors. The district court relied on three factors:

> "(B) the father is unfit as a parent or incapable of giving consent;
> "(C) the father has made no reasonable efforts to support or communicate with the child after having knowledge of the child's birth;
> . . . .
> "(G) the father has failed or refused to assume the duties of a parent for two consecutive years next preceding the filing of the petition."

When making a determination to terminate parental rights, K.S.A. 2015 Supp. 59-2136(h)(2) permits the court to consider and weigh the best interests of the children and to disregard incidental visitations, contacts, communications, or contributions. Here, the district court did so and concluded that terminating father's parental rights was in the children's best interests.

The district court found that K.S.A. 2015 Supp. 59-2136(h)(1)(B) applied to father. In determining unfitness, the district court sought guidance in the nonexclusive list of factors provided under K.S.A. 2015 Supp. 38-2269(b). The district court found father unfit under K.S.A. 2015 Supp. 38-2269(b)(5), which defines unfitness for a parent's "conviction of a felony and imprisonment." The district court found that this factor applied because the father committed a violent act against the mother in front of the children, which led to his conviction of a felony and incarceration. In addition, the district court found the father was unfit under K.S.A. 2015 Supp. 38-2269(b)(1) because he had a

5

physical disability which rendered him incapable of caring for the ongoing physical, mental, and emotional needs of the child. The district court admitted that incarceration may not be the type of physical disability contemplated by the legislature, but the court found that father's incarceration and impending deportation to Mexico made him incapable of being present and participating in the children's lives.

In support of this factor, the district court found that father made little to no effort to communicate with or provide support for his children. The factual chronology recited earlier in this opinion confirms this finding.

The district court further found that father made little to no effort to maintain a relationship with his children during the 2 years preceding the filing of the adoption petition, even when considering his incarceration as a special circumstance. Because father has been incarcerated the 2 years prior to the filing of the petition, it is proper for the court to look to and consider events beyond the 2-year inquiry period established by K.S.A. 2015 Supp. 59-2136(h)(1)(G) to determine whether father made sufficient efforts to maintain a close relationship with his children before being incarcerated. See *In re Adoption of A.J.P.*, 24 Kan. App. 2d 891, Syl. ¶ 2, 953 P.2d 1387 (1998). Once again, the factual chronology recited earlier in this opinion confirms this finding.

But father maintains that the district court erred in not taking into account the facts that (1) he believed there was a no-contact order preventing him from communicating with his children and (2) he had a significant relationship with the children prior to the violent incident. We find no evidence that the father made any inquiry into the parameters of the no-contact order which covered mother but not the children or the grandmother who would know how to contact the children. Further, father's relationship with the children before the incident on July 5, 2011, does not negate his total abandonment of them thereafter.

6

In the case of an incarcerated parent, the court must decide whether the parent sought available opportunities and options in order to perform parental duties. *In re Adoption of S.E.B.*, 257 Kan. at 273; *In re Adoption of F.A.R.*, 242 Kan. at 236. Our courts have recognized that during an incarceration, a parent may have very little money to contribute or to send to the children for their support. See *In re Adoption of S.E.B.*, 257 Kan. at 274; *In re Adoption of F.A.R.*, 242 Kan. at 239-40. When that happens, the lack of support may not be considered as a failure or refusal to assume parental duties. But here, father failed to support his children financially, emotionally, or in any fashion before his incarceration from July 2011 until his arrest in March 2012; and he made no effort thereafter to maintain any relationship with the children thereafter. The children last saw their father when they were ages 5 and 4. At the time of trial, they were ages 9 and 8. When he is eventually released from prison, the children will be ages 12 and 11. He will have been absent from the children's lives for almost 7 years.

Father will remain incarcerated until March 2018, at which time he will be deported. In *In re S.D.*, 41 Kan. App. 2d 780, 790, 204 P.3d 1182 (2009), the court concluded there was sufficient evidence to support the district court's determination that the mother's incarceration on a felony conviction supported a finding that mother was unfit by reason or conduct or condition that was not likely to change in the foreseeable future. Here, the circumstances are more dire than those in *In re S.D.* by virtue of father's inevitable deportation. Under these circumstances, the district court's finding that father is unfit and that it is in the best interests of the children that the father's parental rights be terminated is supported by clear and convincing evidence.

Viewing the evidence in the light most favoring the stepfather, there is clear and convincing evidence to support the district court's termination of father's parental rights.

Affirmed.

7