NOT DESIGNATED FOR PUBLICATION

No. 124,863

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

In the Matter of the Adoption of S.C.,
A Minor Child.

MEMORANDUM OPINION

Appeal from Anderson District Court; ERIC W. GODDERZ, judge. Opinion filed September 9, 2022. Affirmed.

*BreAnne Hendricks Poe*, of Harris Kelsey, Chtd., of Ottawa, for appellant natural father.

*Jennifer E. Spangler*, of Ottawa, for appellee adoptive father.

Before ARNOLD-BURGER, C.J., SCHROEDER and WARNER, JJ.

PER CURIAM: The district court may terminate the rights of a parent contesting an adoption if the parent "has failed or refused to assume the duties of a parent for two consecutive years immediately preceding the filing of the petition." K.S.A. 2021 Supp. 59-2136(h)(1)(G).

Stepfather sought to adopt S.C. but the natural father (Father) refused to relinquish his parental rights. Stepfather petitioned the court to terminate Father's parental rights, asserting that Father failed or refused to assume parental duties over S.C. for two years before the filing of the petition. The district court determined that Father failed to assume his parental duties, terminated his parental rights, and granted Stepfather's petition for adoption. We affirm.

1

Father and Mother married in 2016 and S.C. was born the same year. According to Mother, Father started being abusive shortly after their marriage and the abuse continued until they separated in July 2017. Soon after, Mother obtained a protection from abuse order (PFA) against Father. In October 2017, the prosecutor in Anderson County charged Father with aggravated robbery, aggravated residential burglary, violation of a protection order, misdemeanor theft, domestic battery, and criminal damage to property—all with Mother as the victim. Also in 2017, Mother applied for food stamps. As part of that application, the State required that she also apply for child support.

After almost four months, the court released Father on probation. While on probation, he moved out of state and was ultimately charged with new crimes. The court revoked his probation and remanded him to spend additional time in the Anderson County jail.

In 2018, Mother petitioned for divorce. Father could not be located for service, so Mother had to serve him by publication. The district court held the divorce hearing in January 2019 and Father did not appear because of his incarceration. The court entered its order of divorce and Mother was granted sole custody of S.C. The court allowed Father supervised visitation for one hour every other week. Supervision was to be provided by an agreed upon third party or by a child visitation center or exchange center, such as KVC or TFI. No individual was ever agreed upon by the parties, leaving organizations like KVC or TFI as the only option to make arrangements for visitation. In addition, the court ordered Father to pay $199 per month in child support beginning in 2017.

In July 2019, Father sent a threatening text to Mother and a court issued another PFA order in January 2020. The PFA did not prevent Father from having visits with S.C., he simply needed to arrange them through organizations like KVC or TFI. Father was out

of jail eight months, from June 2019 to March 2020, and maintained employment during that time. But by the time the court took up this action, Father was in the Kansas state prison in Ellsworth, for various charges from Franklin County—including his involvement in a nonfatal stabbing.

At the adoption hearing, Father agreed that he has never paid any child support and he has not visited S.C. since at least August 2018. The district court also made note of the divorce file that showed that Father had never asked for any modification to the visitation requirements set out in the divorce decree. He never sought to enforce parenting time—the necessary action if he believed Mother was denying him access. Nor did he ever attempt to communicate with S.C. electronically. The district court acknowledged that the protective order would have made it difficult for Father to contact Mother about S.C., but the court also found that Father did not seek to modify the protective order.

Ultimately, the district court found that Father failed to assume the duties of a parent for two consecutive years before the filing of the petition, terminated Father's parental rights, and granted Stepfather's petition for adoption.

Father timely appeals.

ANALYSIS

The district court may terminate the rights of a parent contesting an adoption if the parent "has failed or refused to assume the duties of a parent for two consecutive years immediately preceding the filing of the petition." K.S.A. 2021 Supp. 59-2136(h)(1)(G). We review the factual findings made by the district court that support its finding to determine whether, after viewing all of the evidence in the light most favorable to the prevailing party, the findings were supported by clear and convincing evidence. K.S.A.

3

2021 Supp. 59-2136(h)(1). When determining whether factual findings are supported by clear and convincing evidence, we do not weigh conflicting evidence, pass on the witnesses' credibility, or redetermine questions of fact. *In re Adoption of B.B.M.*, 290 Kan. 236, 244, 224 P.3d 1168 (2010). So the question we must answer on appeal is whether the district court's findings related to Father are supported by clear and convincing evidence.

Father acknowledges that he was incarcerated for much of the relevant time period but argues that he sought to set up supervised parenting time, but Mother refused. He also argues that the protective order made it impossible for him to contact Mother about visiting S.C. As a result, he claims the district court failed to consider that Father unsuccessfully attempted to contact S.C.

Our Supreme Court has recognized the difficulty that incarcerated individuals have in fulfilling their parental duties from a prison cell. But the question is whether they did everything they could to fulfill those duties. See *In re Adoption of S.E.B.*, 257 Kan. 266, 273, 891 P.2d 440 (1995) (holding that when a nonconsenting parent in a stepparent adoption is "incarcerated and unable to fulfill the customary parental duties required of an unrestrained parent, the court must determine whether such parent has pursued the opportunities and options which may be available to carry out such duties to the best of his or her ability"). If a parent is incarcerated for a substantial portion of the relevant two-year period, the court can look, if necessary, to the time before the two-year period to determine whether the parent made sufficient efforts to maintain a close relationship with their child. *In re Adoption of A.J.P.*, 24 Kan. App. 2d 891, Syl. ¶ 2, 953 P.2d 1387 (1998).

Here the district court, consistent with *In re Adoption of S.E.B.* and *In re Adoption of A.J.P.*, considered whether Father pursued the opportunities and options available to him and found that he did not. The district court found that Father did nothing to have

4

prior court orders altered to allow for easier visitation, he did not seek supervised parenting time with professional supervision agencies, he did not try to have other forms of contact with S.C., nor did he provide any financial support for S.C. As a result, the district court determined that Father did not use the opportunities and options available to him to assume his parental duties. See *In re Adoption of S.E.B.*, 257 Kan. at 273.

Nor did Father ask the court to look back to a time before the two-year period. The record is devoid of any evidence that Father sought to maintain a close relationship or assume parental duties for S.C. even before his incarceration. In fact the record reflects that Mother and Father separated shortly after S.C.'s birth and Father was jailed for domestic violence against Mother. Even though the two-year window between August 2018 and August 2020 is the alleged time frame, there is clear and convincing evidence that Father has had no contact with S.C. since 2017 and that he has never supported S.C. financially. As the district judge noted, that even if Father were released from custody in October 2021—as he hoped to be—based on what has happened in the past there is nothing to indicate that "circumstances are going to change to where [Father] starts meeting some of the duties. The track record in this particular case doesn't show that that's going to happen. In fact, it shows just the opposite."

Based on the record available on review, the district court did not err in terminating Father's parental rights and granting Stepfather's petition for adoption. There was clear and convincing evidence to support a finding that Father failed or refused to assume his duties as a parent for two consecutive years immediately preceding the filing of the petition. See K.S.A. 2021 Supp. 59-2136(h)(1)(G). For this reason, we affirm.

Affirmed.