No. 60,105

In The Matter of the ADOPTION OF F.A.R. and D.M.R., Minor Children.

(747 P.2d 145)

Opinion filed December 11, 1987.

*Victoria M. Kumorowski*, of Kumorowski & Kumorowski, of Hutchinson, argued the cause and was on the brief for appellant.

*Kim D. Steele*, of Legal Services for Prisoners, Inc., of Hutchinson, argued the cause and was on the brief for appellee.

The opinion of the court was delivered by

HOLMES, J.: Wayne E. Leikam appeals from an order of the Reno County District Court denying his petition to adopt his two minor stepchildren for lack of consent by the children's natural father. The court found that appellant failed to meet his burden of proof that consent was not required on the ground that the natural father had "failed or refused to assume the duties of a parent for two consecutive years." K.S.A. 1986 Supp. 59-2102(a)(3).

The children involved, F.A.R. born July 23, 1977, and D.M.R. born March 8, 1979, are both boys born in lawful wedlock. The children's parents were divorced October 14, 1981. The mother married the appellant in February, 1984. In compliance with the spirit of Supreme Court Rule 7.043, the natural father will be

referred to simply as appellee. Appellant, with the consent of the natural mother, filed a petition to adopt F.A.R. and D.M.R. on February 12, 1986. Appellee refused to grant his consent to the adoption and affirmatively contested the adoption. Appellant contended in the trial court that the consent was not required, relying upon K.S.A. 1986 Supp. 59-2102(a), which provides in part:

"(a) Before any minor child is adopted, consent to the adoption must be given by:

. . . .

"(3) one of the parents, if the other has failed or refused to assume the duties of a parent for two consecutive years . . . ."

The specific issue before the court is whether the trial court committed error in ruling that under the facts of this case the consent of the appellee was required.

Most of the facts are not in dispute. In late 1979, appellee was convicted of rape, aggravated burglary, and attempted rape and was sentenced to a prison term of forty-five years to life. From December 1979 until the date of the hearing on the petition for adoption, he was confined at the Kansas State Industrial Reformatory at Hutchinson (K.S.I.R.). Appellee will not be eligible for parole, under present statutes and regulations, until 1994.

The children and their mother regularly visited respondent at K.S.I.R. until June 1981, when the mother decided to terminate the visitations. On July 31, 1981, she filed for a divorce which was granted October 14, 1981. Sole custody, care, and control of the two children was given to their mother, subject to reasonable visitation rights of the appellee. No provision was made for child support. In late 1981, the appellee filed a motion seeking specific visitation rights which were granted with respect to the older child. However, the court refused to order visitation with the younger child, D.M.R. Under the order, F.A.R. was to be transported once weekly from his mother's residence to K.S.I.R. by a volunteer from K.S.I.R. Chaplaincy Services who was also to supervise the visits. F.A.R. visited his father three times with the last visit occurring January 20, 1982. He was visibly upset after that visit. The next week, F.A.R. cried and was unwilling to go visit his father. His mother did not force him to go and the chaplaincy services volunteer declined to take the boy to visit his father. On March 5, 1982, the appellee filed a motion in the

divorce action seeking specific visitation with D.M.R. The motion was denied by the court on March 19, 1982. Appellant has had no direct contact with D.M.R. since June 21, 1981, nor with F.A.R. since January 20, 1982. Additional facts will be developed as they pertain to the specific issues on appeal.

The trial court in its memorandum opinion, after identifying the parties, found, *inter alia*:

"3. That the natural parents were divorced on October 14, 1981, 2 years after the father entered K.S.I.R. on a 45 to life sentence on October 19, 1979.

"4. That the father has been incarcerated continuously from his entry date to present.

"5. That the mother initially visited the father at K.S.I.R. and also took the children with her to visit. That the last visit the natural mother made to K.S.I.R. was on June 21, 1981, and the last time the father saw either of his children was on January 20, 1982.

"6. That the father made attempts to expand visitation but was denied.

"7. That the mother made no attempts to contact the father and, at times, the father did not know the whereabouts of his children. That the mother also returned a proffered support payment by the father.

"8. The father's last contact with his sons was a photo of the boys with a note that asked him to 'back off' on his attempts to contact his ex-wife and sons.

"9. The actions by the mother constitute interference with the rights of the non-custodial parent to maintain contact with his sons. The court understands the reluctance of the mother to continue the association of her sons with the father, a now convicted rapist, but, the court must strictly construe towards maintaining the natural relationship between parent and child.

"10. The court must hold that the petitioner has failed to meet the burden of proof to show that the respondent has failed or refused to assume his parental duties."

Appellant's first issue essentially attacks the trial court's consideration of appellee's incarceration as a factor in determining whether he failed to assume parental duties and the trial court's finding that the children's mother had interfered with the father's attempts to maintain contact with his sons.

In determining the issues, certain basic principles must be kept in mind. In *Aslin v. Seamon*, 225 Kan. 77, 587 P.2d 875 (1978), we stated:

"Ordinarily the question whether or not an individual has failed or refused to assume the duties of a parent for the required period of time is a factual one to be determined by the trier of facts upon competent evidence after a full and complete hearing. *In re Herbst*, 217 Kan. 164, 535 P.2d 437 (1975); *In re Sharp*, 197 Kan. 502, Syl. ¶ 5, 419 P.2d 812 (1966); *In re Waters*, 195 Kan. 614, Syl. ¶ 1,

408 P.2d 590 (1965). When findings of fact are attacked for insufficiency of evidence or as being contrary to the evidence, the duty of the appellate court extends only to a search of the record to determine whether substantial competent evidence exists to support the findings. An appellate court will not weigh the evidence or pass upon the credibility of the witnesses. Under these circumstances the reviewing court must review the evidence in the light most favorable to the party prevailing below. *Craig v. Hamilton*, 221 Kan. 311, 313, 559 P.2d 796 (1977) and cases cited therein." p.78.

It should also be noted that the best interests of the child, which is the paramount consideration in custody matters, is not controlling in determining the statutory issue of whether a natural parent has failed to assume parental duties. We have no doubt that the best interests of the children in this case weighs heavily in favor of the adoption. It is unfortunate that this father apparently has little concern for the children's welfare and, instead, has chosen to stand upon his legal rights, but under our statutory scheme of adoption he has that choice.

We also note that the fitness of the appellee as a parent is not a controlling factor under K.S.A. 1986 Supp. 59-2102(a)(3) as it would be in a proceeding to sever parental rights pursuant to K.S.A. 38-1581 *et seq. In re Adoption of Wilson*, 227 Kan. 803, 806, 610 P.2d 598 (1980).

Appellant cites numerous cases from other jurisdictions in support of his contention that the trial court erred in considering the appellee's incarceration as a factor in deciding whether he failed to assume parental duties. At the hearing on appellant's motion for a new trial, the trial court's comments indicated that the effect of the appellee's incarceration upon his ability to assume parental duties was an important factor in its decision. That the father had been continuously incarcerated from October 19, 1979, to the date of the decision was a specific finding in the trial court's memorandum opinion.

Kansas appellate courts have not specifically addressed the issue of what effect should be given to the incarceration of a divorced parent in determining whether that parent has failed to assume the duties of a parent to the extent that consent to adoption is not required. However, this court has consistently held that adoption statutes are to be strictly construed in favor of maintaining the rights of a natural parent, especially where it is claimed that consent to adoption is not required due to the

natural parent's failure to fulfill parental obligations. *E.g., In re Sharp*, 197 Kan. 502, 504, 419 P.2d 812 (1966). This court has also held that a parent's reasons, if any, for inaction may be properly considered by the court in support of an answer to an adoption petition. *In re Sharp*, 197 Kan. at 508.

Appellant relies heavily on cases from other jurisdictions summarized in Annot., Parent's Involuntary Confinement, or Failure to Care for Child as Result Thereof, as Permitting Adoption Without Parental Consent, 78 A.L.R.3d 712 (1977), and its current supplement. This court has previously noted, however, that the language of the applicable statute is *sui generis*, and authorities from other jurisdictions which apply statutes worded differently from ours are not necessarily persuasive. *In re Sharp*, 197 Kan. at 506; *In re Waters*, 195 Kan. 614, 617, 408 P.2d 590 (1965). As might be expected, there is no unanimity of opinion in other jurisdictions as to the effect that incarceration bears upon the issue of necessity of consent.

In considering whether a nonconsenting parent has failed to assume his or her parental duties for two consecutive years, all the surrounding circumstances must be considered. When a nonconsenting parent is incarcerated and unable to fulfill the customary parental duties required of an unrestrained parent, the court must determine whether such parent has pursued the opportunities and options which may be available to carry out such duties to the best of his or her ability. It is obvious that a parent imprisoned for a long term cannot provide the customary parental care and guidance ordinarily required. If an imprisoned parent has made reasonable attempts to contact and maintain an ongoing relationship with his or her children, it is for the trial court to determine the sufficiency of such efforts. Here, the trial court was correct in considering the limiting effect of appellee's confinement as one factor in resolving the issue. We do not construe the trial court's findings as granting undue emphasis upon the appellee's imprisonment, or as considering it a controlling factor relieving appellee of all duties toward his children. Whether the efforts made by appellee were sufficient to meet his parental obligations under all the circumstances will be considered in connection with appellant's attack upon the sufficiency of the evidence. We hold that it was not error for the trial

court to take into consideration the limiting aspects of appellee's confinement in determining whether he had failed to assume his parental duties.

As a part of his first issue, appellant also asserts error in the trial court's finding that certain "actions by the mother constitute interference with the rights of the non-custodial parent to maintain contact with his sons." The evidence on this point was hotly contested. When findings by the trier of fact are challenged for insufficiency of the evidence or as being contrary to the evidence, the appellate court's duty is to review the evidence in the light most favorable to the party prevailing below to determine whether substantial competent evidence exists to support the findings. *In re Adoption of Crider*, 236 Kan. 712, 712-13, 696 P.2d 356 (1985); *Aslin v. Seamon*, 225 Kan. at 78. The ultimate finding that the natural mother interfered with appellee's rights to maintain contact with his sons was supported by the evidence, when it is viewed in the light most favorable to appellee. He testified that he received a letter in March 1984 from the boys' mother in which she promised she would keep him informed about the boys if appellee would not fight her for visitations. Appellee's niece testified that in mid-1984, at the request of appellee, she asked the boys' mother if the niece could take the boys to K.S.I.R. to visit their father, but the mother responded that "she didn't want them to go up there." On cross-examination, the mother testified that in 1981 she notified appellee she would no longer take the children to see him, and admitted writing a letter to appellee in late 1981 which included the statement, "I will go to jail before I let you see the boys . . . ." The record contains support for the trial court's finding that the natural mother interfered with appellee's rights to keep in contact with his sons. However, the court also recognized the natural reluctance of the mother to take two small children to the prison to visit and was sympathetic to her. It does not appear that the trial judge's finding of fact on this point was a principal factor in his ultimate decision in this case. It merely was one of the circumstances considered in the overall decision and was certainly not a controlling factor.

The next issue asserted on appeal is whether the trial court erred in excluding certain evidence regarding the appellee's

conduct toward his wife and children prior to his incarceration in 1979, more than six years prior to the filing of the adoption petition. A review of the record indicates that the evidence to which objections were sustained was an attempt to explain the natural mother's reluctance to allow respondent visitations with his children. As the appellee's brief correctly notes, the excluded evidence essentially related to respondent's fitness as a parent, which is not at issue in a proceeding under K.S.A. 1986 Supp. 59-2102(a)(3). *In re Adoption of Wilson*, 227 Kan. at 806. While several objections to the mother's testimony were sustained, much evidence did come in without objection. The court was well aware of the appellee's shortcomings as it heard testimony of the beatings suffered by the children's mother, the threats by appellee, his failure to support the children from the outset, and other testimony. As stated by the judge, "The mother made a bad choice at the time she got married . . . to [appellee]." Appellant also takes issue with the trial court's rulings in allowing testimony of the appellee regarding events which preceded the two-year period prior to the filing of the adoption petition. Our examination of the record reveals the trial court granted both parties considerable leeway in testifying as to background matters and events prior to the two-year period to explain the action or inaction of the parties during the two-year statutory period. While the critical statutory period is limited to the two years immediately preceding the filing of the petition (*In re Sharp*, 197 Kan. 502, Syl. ¶ 3), we hold there is no error in admitting evidence of events occurring prior to that period to the extent it is relevant to explain or prove conduct or lack thereof during the two-year period.

The final issue raised by appellant challenges the trial court's finding that appellant did not sustain his burden of proof that appellee failed to assume the duties of a parent for two consecutive years. This court has consistently held this question is an issue of fact for the trial court to determine upon competent evidence after a full hearing. *In re Adoption of Crider*, 236 Kan. at 712-13; *Aslin v. Seamon*, 225 Kan. at 78; *In re Waters*, 195 Kan. at 617. Our scope of review on this issue is narrow. This court will search the record only to determine whether substantial competent evidence exists to support the trial courts findings,

and will not weigh the evidence or pass upon the credibility of witnesses. The reviewing court must review the evidence in the light most favorable to the party prevailing below. *Aslin v. Seamon*, 225 Kan. at 78; *Craig v. Hamilton*, 221 Kan. 311, 313, 559 P.2d 796 (1977), and cases cited therein. Before a child can be adopted without the consent of one of the natural parents, the facts warranting an exception as prescribed by statute must be "clearly proven." *In re Adoption of Harrington*, 228 Kan. 636, 638, 620 P.2d 315 (1980); *In re Sharp*, 197 Kan. at 505.

The duties of a parent addressed by the statute include not only the common-law duty of financial support, but also the "natural and moral duty of a parent to show affection, care and interest toward his or her child." *In re Adoption of Wilson*, 227 Kan. at 805; see also *In re Sharp*, 197 Kan. at 508.

Throughout the two-year period, appellee did make attempts through his relatives to learn the whereabouts of his sons, and his testimony to that effect was corroborated by two nieces. He testified that between 1981 and 1984, he wrote letters to his former wife but received no response. Appellee testified that in March 1984 he received a letter from the children's mother along with a photograph of the children. In the letter, he was assured the mother would keep him informed about his sons if he would not fight her for visitations. Appellee also testified that he had sought legal advice in May 1982 about enforcing his visitation rights, but was reluctant to pursue the matter when he was told the mother might risk imprisonment for contempt of court for refusing to permit visitations. He expressed concern about who would care for his sons.

Although appellee provided no financial support for his sons during the two-year period, he was under no court order to do so, and a 1981 payment of $100 mailed to his former wife for his children had been returned to him with a note discouraging him from trying to see the children. He earned an average of only nine dollars per month working at K.S.I.R., which he spent for toiletries such as soap and shampoo not provided by the reformatory. Appellee regularly entered notations on his calendars remembering his sons' birthdays and recording his efforts to get information about the boys' whereabouts and well-being from his relatives. He asked one of his nieces to seek approval from

the children's mother for them to visit him at K.S.I.R., and two nieces testified that a mid-1984 request to do so was rebuffed. One of the nieces also testified that appellee had told her in December 1983 that Christmas cards and letters he had mailed to the boys had been returned to him, and that appellee did not know where the boys were living. The evidence, when viewed in the light most favorable to appellee, supports the trial court's conclusion that appellant failed to meet his burden of proof on the question of whether the appellee failed to assume parental duties for the relevant period. Although individual members of this court might have reached a contrary result if sitting at the trial level, when the evidence is viewed in the light most favorable to the appellee, we cannot say the trial court abused its discretion in denying the petition for adoption.

The judgment is affirmed.

MILLER, J., and McFARLAND, J., dissenting.