NOT DESIGNATED FOR PUBLICATION

Nos. 126,718
126,719

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

In the Interests of K.D. and E.D., Minor Children.

MEMORANDUM OPINION

Appeal from Leavenworth District Court; JOAN M. LOWDON, judge. Submitted without oral argument. Opinion filed September 27, 2024. Affirmed.

*Jennifer Martin Smith*, of Alderson, Alderson, Conklin, Crow & Slinkard, L.L.C., of Topeka, for appellant natural father.

*Ashley Hutton*, assistant county attorney, and *Todd Thompson*, county attorney, for appellee.

Before ARNOLD-BURGER, C.J., GREEN and COBLE, JJ.

PER CURIAM:  The natural father (Father) appeals the termination of his parental rights to his two children, K.D. and E.D. He contends the district court improperly terminated his parental rights based on his incarceration alone. We disagree. As a result, we affirm the district court's termination of Father's parental rights.

FACTS

On July 28, 2021, K.D. and E.D. were placed in the temporary custody of the Secretary of the Kansas Department for Children and Families (DCF). At the time, Father was incarcerated. Mother was homeless and not able to care for the children due to her methamphetamine addiction. Mother left the children at their paternal grandmother's house for several months and rarely checked on them. The paternal grandmother was not

1

a safe placement for the children due to allegations of physical abuse. DCF and Mother created a safety plan for the children to reside with the maternal grandmother in Virginia. Mother did not comply with the safety plan and refused to tell DCF where the children were located.

Father made a no-contest statement that the children were indeed in need of care. On October 12, 2021, the district court adjudicated the children to be children in need of care under K.S.A. 38-2202(d)(1), (d)(2), and (d)(3). The court ordered Father to have telephone contact with his children while incarcerated, to be arranged by Cornerstones of Care. Father was assigned the following case plan tasks: attend a parenting class, maintain stable housing, provide stable income, maintain a consistent visitation schedule with the children, attend a domestic violence class, get a mental health assessment, resolve all legal issues, get a drug and alcohol assessment, and submit timely random negative urinalysis.

On August 29, 2022, the State moved to terminate Father's parental rights. On November 16, 2022, the district court heard the motion. The children were born in 2017 and 2018, and at the time of the hearing, they were four and five years old. Father remained incarcerated for attempted aggravated robbery and domestic violence, with an earliest possible release date of December 24, 2023. He had not been written up for any prison rules violations.

Father testified that he had been incarcerated since January 2020. He tried to take a mental health assessment while incarcerated but was told he did not meet the criteria. He was unable to complete a drug and alcohol assessment or parenting class in the prison. He inquired about a parenting class two to three months before the hearing. He was unable to do urinalysis tests unless Cornerstones reached out to his unit team at the prison. He did a domestic violence assessment before this case was initiated but not after. He made regular attempts to contact Cornerstones.

2

The case manager testified generally that case plan tasks existed which Father could have completed while in prison, but he did not complete. But she did not know whether a mental health assessment or parenting classes were available to Father through the prison. She believed so.

Father had phone visits with the children for a few months. Then in April 2022, his work schedule changed to the night shift and the phone visits stopped. His only time to contact the children was between 2 p.m. and 4:30 p.m. The children had school and after-school programs from 8 a.m. to 5 p.m. or longer. Weekends were not feasible because there was no unit team at the prison. Father testified that he loved his children and wanted more contact with them but was limited by being in prison. The case manager testified that Father was doing as much as he could to facilitate contact with his children, but it was infeasible due to everyone's schedules.

Father testified that he lived with Mother and the children before his incarceration beginning in 2015. Mother was not using drugs then. Father had been incarcerated previously from 2010 to 2013 for aggravated robbery and criminal discharge of a firearm at an occupied dwelling. He planned to live with his mother in Leavenworth when he was released from prison.

Father testified that while in prison he had a full-time job earning $9 an hour. He was sending money to his mother for the children. The case manager testified Cornerstones had not seen any of that money.

The case manager testified the children had developed an increase in behavioral issues after having to be moved from one foster home to another. K.D. was throwing tantrums often. He was receiving services through a Serious Emotional Disturbance (SED) waiver. E.D. was struggling with enuresis and encopresis. They were both in

therapy. Neither spoke about whether they missed their parents. The maternal grandmother was a potential adoptive resource for the children. She lived in Virginia.

The district court ruled that Father was unfit and terminated his parental rights. The court ruled Father unfit by clear and convincing evidence because he had been convicted of a felony and was serving a term of imprisonment under K.S.A. 38-2269(b)(5); that there had been a failure of reasonable efforts by appropriate agencies to rehabilitate the family under K.S.A. 38-2269(b)(7); and that Father failed to carry out a reasonable plan approved by the court directed toward reintegration under K.S.A. 38-2269(c)(3) since there were additional tasks that Father could have completed.

The district court determined that Father's unfitness was unlikely to change in the foreseeable future because he had previously served time in prison for similar serious felonies and because he planned to live with his mother after release. The children were brought into DCF custody after allegations of abuse by Father's mother. The court ruled termination was in the children's best interests because they had developed behavioral issues after being moved from one foster home to another and that they were deserving of permanency. The court also terminated Mother's parental rights.

Father appeals.

ANALYSIS

I. *Did the district court err in finding Father unfit and that Father's unfitness was unlikely to change in the foreseeable future?*

When a child has been adjudicated to be a child in need of care, the district court may terminate parental rights when the court finds "by clear and convincing evidence that the parent is unfit by reason of conduct or condition which renders the parent unable to

4

care properly for a child and the conduct or condition is unlikely to change in the foreseeable future." K.S.A. 38-2269(a).

The statute lists nonexclusive factors the district court shall consider in determining unfitness. K.S.A. 38-2269(b). The court must also consider a separate list of nonexclusive factors when a child is not in the parent's physical custody. K.S.A. 38-2269(c). Any one of the factors in K.S.A. 38-2269(b) or (c) may, but does not necessarily, establish grounds for termination of parental rights. K.S.A. 38-2269(f).

The foreseeable future is examined from the child's perspective. Children and adults have different perceptions of time. A month or a year seems considerably longer for a child than it would for an adult. Children have a right to permanency within a time frame reasonable to them. *In re M.S.*, 56 Kan. App. 2d 1247, 1263-64, 447 P.3d 994 (2019); *In re M.H.*, 50 Kan. App. 2d 1162, 1170, 337 P.3d 711 (2014); see K.S.A. 38-2201(b)(4). Courts may look to the parent's past conduct as an indicator of future behavior. *In re M.S.*, 56 Kan. App. 2d at 1264.

The appellate court must be convinced, after reviewing all the evidence in the light most favorable to the prevailing party, the district court's fact-findings are highly probable, that is, supported by clear and convincing evidence. Appellate courts do not weigh conflicting evidence, pass on the credibility of witnesses, or redetermine questions of fact. *In re Adoption of Baby Girl G.*, 311 Kan. 798, 806, 466 P.3d 1207 (2020).

Incarceration is not an automatic basis for finding a parent unfit. Courts must examine the facts of each case to determine how to view the incarceration of a parent. *In re T.H.*, 60 Kan. App. 2d 536, 548, 494 P.3d 851 (2021):

> "'When a nonconsenting parent is incarcerated and unable to fulfill the customary parental duties required of an unrestrained parent, the court must determine whether such

5

parent has pursued the opportunities and options which may be available to carry out such duties to the best of his or her ability. It is obvious that a parent imprisoned for a long term cannot provide the customary parental care and guidance ordinarily required. If an imprisoned parent has made reasonable attempts to contact and maintain an ongoing relationship with his or her children, it is for the trial court to determine the sufficiency of such efforts.' *In re F.A.R.*, 242 Kan. 231, 236, 747 P.2d 145 (1987)." *In re T.H.*, 60 Kan. App. 2d at 548.

*Unfitness*

The district court ruled that Father is unfit because of his imprisonment under K.S.A. 38-2269(b)(5) and his failure to do the case plan tasks he could accomplish while in prison under K.S.A. 38-2269(b)(7) and (c)(3). The court did not find Father unfit because of his inability to maintain contact with the children. The court acknowledged Father was trying to maintain contact with the children, but it was out of his control.

Father contends that the district court could not find him unfit based on his incarceration alone. He was as compliant as he could be with the case plan tasks. The agency did not arrange any of the required assessments with the prison. He likens himself to the father in *In re T.H.*

The *In re T.H.* panel majority reversed the termination of a father's parental rights where the father was ruled unfit because he was incarcerated. The panel distinguished cases where incarceration was a driving factor, but not the only factor, in the termination of parental rights. 60 Kan. App. 2d at 537, 549.

The father in *In re T.H.* had always shared or had exclusive custody of his child until he was incarcerated in March 2020 for distribution of methamphetamine. DCF became involved in September 2019 after the child had been burned while in the mother's care. Mother had a significant drug problem and relinquished her parental rights. Before

father was incarcerated, DCF had no concerns with the child residing with father; father met all the child's needs. DCF conducted regular home visits. While incarcerated, father completed his case plan tasks including attending a parenting class, remaining drug free, communicating openly with his case manager, and having no disciplinary action. He always provided financial support for his child before and during incarceration. He maintained contact with the child almost every weekend. He had a well-paying job before incarceration, and the job would be available to him upon his release. He had his own house to live in upon release. Since January 2019, father had completed over 77 drug tests with no positive results. He had a close bond with his child. The child was in the care of the maternal grandparents while the father was incarcerated. Father arranged for the child to frequently stay with father's close friend. Father wanted that friend to be appointed the child's permanent custodian while he was incarcerated. The child was doing well. The relationship between father and child had not deteriorated. The only reason for termination stated by the district judge and argued by the caseworker was father's incarceration.

While there are some similarities between the fathers, there are also many differences between this case and *In re T.H.* Here, Father had not completed a parenting class. There was no testimony concerning his employment plans post-incarceration. He did not have his own house to live in upon release. He would not be allowed to reintegrate with the children at his mother's house, where he would be staying. The children were being shuffled between foster families, rather than in the care of close friends and family. The children had developed behavioral issues and were in therapy.

The *In re T.H.* panel held incarceration can be a mitigating factor or negative factor depending on facts of the case. The district court must determine whether the parent had pursued the opportunities and options available to the best of his or her ability. 60 Kan. App. 2d at 548, 551.

Here, the district court did not believe Father had pursued the opportunities and options available to the best of his ability, commenting that Father had only asked about a parenting class about two months before the termination hearing. In so ruling, the court credited the testimony of the case manager. The court adopted her testimony that case plan tasks existed which Father could have completed while in prison, but he did not complete. The case manager, however, did not specify what tasks were not completed.

This court does not redetermine questions of fact, conflicting evidence, or credibility. *In re Baby Girl G.*, 311 Kan. at 806. Nevertheless, the case manager admitted she did not know what classes or assessments were available at the prison. The case manager had not attempted to arrange for any of the classes or assessments through the prison authorities. There was a lack of concrete testimony from the case manager concerning what tasks Father could have completed. There was a lack of testimony in general concerning Father's unfitness.

That said, Father's incarceration can be viewed as a negative factor given the impact on his children in this case, unlike in *In re T.H*. See 60 Kan. App. 2d at 553. Father was presently unfit. He was unable to parent his children while incarcerated. His children were suffering as a result. When released, Father will have spent more of the children's lives living in prison than living with his children. According to K.S.A. 38-2269(f), one factor alone may establish grounds for termination of parental rights.

*Foreseeable future*

Father contends that he had only 12-13 months left on his sentence, he had no disciplinary complaints that would extend his sentence, his previous convictions occurred during his "errant youth," and he could have had visits with the children somewhere other than at his mother's house. Father maintains that the district court terminated his parental rights solely on the basis of what may happen in the future.

The district court, however, ruled that Father's unfitness was unlikely to change in the foreseeable future because he would be unable to reintegrate with the children while staying with his mother and because he had committed similar serious felonies within a 10-year period.

The district court did not err by looking at Father's past conduct as an indicator of his future behavior. See *In re M.S.*, 56 Kan. App. 2d at 1264. He committed similar violent felonies in the past. Twelve months is a long time in child time. But even after Father completes his sentence, he would still need to complete the case plan tasks he was unable to complete in prison including finding and maintaining a stable home, finding and maintaining stable employment, maintaining a consistent visitation schedule with the children, attending a parenting class, getting a mental health assessment, and keeping his legal issues resolved. The time frame for Father's reintegration with the children was not foreseeable.

II. *Did the district court err in finding termination of Father's parental rights was in the best interests of the children?*

Upon making a finding of unfitness of the parent, "the court shall consider whether termination of parental rights . . . is in the best interests of the child." K.S.A. 38-2269(g)(1). In making such a decision, the district court shall give primary consideration to the physical, mental, and emotional needs of the child. K.S.A. 38-2269(g)(1).

While the district court's unfitness finding must be supported by clear and convincing evidence, the best-interests determination is made on a preponderance of the evidence. "This is because the analysis of a parent's unfitness determines the constitutional question of whether a parent's rights *can* be terminated, and the analysis of the child's best interests determines whether a parent's rights *should* be terminated." *In re E.L.*, 61 Kan. App. 2d 311, 330, 502 P.3d 1049 (2021). The appellate courts review the

9

best-interests determination for abuse of discretion because the district court is in a better position to view the complexities of the situation. The district court abuses its discretion if no reasonable person would agree with the court or the court made a factual or legal error. 61 Kan. App. 2d at 330.

The district court determined that the children had developed behavioral issues after being moved from one foster home to another. The children were deserving of permanency. They had the potential for permanency with a relative.

Father contends that the district court's decision that termination of his parental rights was in the children's best interests was based on the faulty determination that he was unfit due to his incarceration and absence. Because we determine that the district court did not err by ruling Father unfit, then Father has not shown an abuse of discretion by the district court in making its best-interests determination.

The district court did not make a factual or legal error. A reasonable person could agree with the district court that permanency was in the children's best interests. The children were struggling after being moved between foster families. Father testified that he had a bond with the children. But he had no contact with his children since April 2022. There was no indication there was a plan for that to change while Father was incarcerated. The children were young and will have spent more time without Father than with him. The district court was in the best place to judge the best interests of these children.

Affirmed.