NOT DESIGNATED FOR PUBLICATION

Nos. 128,929
128,930

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

In the Interests of J.A.S.P. and J.D.P., Minor Children.

MEMORANDUM OPINION

Appeal from Sumner District Court; CANDACE R. LATTIN, magistrate judge. Submitted without oral argument. Opinion filed January 23, 2026. Affirmed.

*Linda K. Howerton*, of Wellington, for appellant natural father.

*Erin L. Zoglmann*, deputy county attorney, for appellee.

*Elaine M. Esparza*, guardian ad litem, of Harper.

*Martin J. Peck*, of Wellington, for appellees maternal grandparents.

Before ISHERWOOD, P.J., CLINE and COBLE, JJ.

PER CURIAM: Father appeals the termination of his rights to parent his children, J.A.S.P. and J.D.P., after they were designated children in need of care (CINC). He claims insufficient evidence supports the district court's findings of his current and future unfitness.

The district court found Father's substance abuse, repeated and present incarceration, and failure to complete any case plan tasks during the pendency of the CINC case supported terminating his rights. It also found it in the children's best interests to have permanency in the custodial arrangement where they had been thriving with their

1

grandparents. Given the evidence presented, we find the district court's conclusions were sufficiently supported and we affirm the termination order.

FACTUAL AND PROCEDURAL BACKGROUND

J.A.S.P. and J.D.P. were brought into Kansas Department for Children and Families (DCF) custody in February 2024, after their mother was accidentally killed. Father was in jail at the time for violating his probation by using illegal substances, failing to report for court sessions, and failing to attend drug and alcohol treatment. The children were placed with their maternal grandparents after a temporary custody hearing.

The district court determined that the children were in need of care and Father was given several tasks to complete in order to reintegrate with them. Unfortunately, Father continued to struggle with drug addiction and failed to complete any of the tasks he was assigned. Throughout the CINC case, Father was incarcerated three times for violating the terms of his probation. He was also expelled from two sober living programs. Because of his incarceration and failure to remain drug free, he had no visitation with his children throughout the case. Ultimately, the district court terminated his parental rights after an evidentiary hearing on January 3, 2025.

Father timely appealed the termination decision.

REVIEW OF FATHER'S APPELLATE CHALLENGE

Father argues there was insufficient evidence to support the district court's findings that he was unfit to care for his children and that his unfitness was unlikely to change in the foreseeable future. He notes that although he was still incarcerated at the time of the termination hearing, he expected to be released a few months later. He asserted that he would be able to properly care for the children at the time of his release

2

and argued that he had addressed his drug addiction through treatment during the CINC case.

*Standard of Review and Relevant Legal Framework*

A person has a constitutionally recognized right to a parental relationship with their child. See *In re B.D.-Y.*, 286 Kan. 686, 697-98, 187 P.3d 594 (2008). Accordingly, the State may extinguish the legal bond between a parent and child only upon clear and convincing proof of parental unfitness. K.S.A. 38-2269(a); *In re R.S.*, 50 Kan. App. 2d 1105, Syl. ¶ 1, 336 P.3d 903 (2014). The Legislature has enacted the Revised Kansas Code for Care of Children, K.S.A. 38-2201 et seq., to codify processes for finding children in need of care, for fostering family reunification, and for terminating parental rights if those efforts fail.

After a child has been adjudicated in need of care, a district court may terminate parental rights "when the court finds by clear and convincing evidence that the parent is unfit by reason of conduct or condition which renders the parent unable to care properly for a child and the conduct or condition is unlikely to change in the foreseeable future." K.S.A. 38-2269(a). In considering a parent's unfitness, the district court may apply the factors outlined in K.S.A. 38-2269(b) and, when the child has been removed from the home, the other factors in K.S.A. 38-2269(c). In this case, the district court drew from both of those sources to find Father unfit. A single factor may be sufficient to establish unfitness. K.S.A. 38-2269(f).

In gauging the likelihood of change in the foreseeable future under K.S.A. 38-2269(a), the courts should use "child time" as the measure. As the Code recognizes, children experience the passage of time in a way that makes a month or a year seem considerably longer than it would for an adult, and that difference in perception typically

3

tilts toward a prompt, permanent disposition. K.S.A. 38-2201(b)(4); *In re M.B.*, 39 Kan. App. 2d 31, 45, 176 P.3d 977 (2008).

When the sufficiency of the evidence supporting a decision to terminate parental rights is challenged, an appellate court will uphold the decision if, after reviewing the record evidence in a light most favorable to the State as the prevailing party, the district court's findings on unfitness and foreseeability of change are supported by clear and convincing evidence. Stated another way, the appellate court must be persuaded that a rational factfinder could have found it highly probable that the circumstances warrant the termination of parental rights. *In re B.D.-Y.*, 286 Kan. at 705. In evaluating the record, the appellate court does not weigh conflicting evidence, assess the credibility of witnesses, or determine factual questions. *In re Adoption of B.B.M.*, 290 Kan. 236, 244, 224 P.3d 1168 (2010); *In re M.H.*, 50 Kan. App. 2d 1162, 1170, 337 P.3d 711 (2014).

Upon making a finding of unfitness of the parent, "the court shall consider whether termination of parental rights as requested in the petition or motion is in the best interests of the child." K.S.A. 38-2269(g)(1). In making such a decision, the court shall give primary consideration to the physical, mental, and emotional health of the child. And if the physical, mental, or emotional needs of the child would best be served by termination of parental rights, the court shall so order. K.S.A. 38-2269(g)(1).

A district court decides best interests based on a preponderance of the evidence. See *In re R.S.*, 50 Kan. App. 2d at 1115-16. But see *In re D.G.*, 319 Kan. 446, 463, 555 P.3d 719 (2024) (declining to decide whether clear and convincing standard or preponderance standard applies to best interests finding). The decision rests in the district court's sound judicial discretion. *In re R.S.*, 50 Kan. App. 2d at 1116. An appellate court reviews those sorts of conclusions for abuse of discretion. As this court has said: "A district court exceeds that broad latitude if it rules in a way no reasonable judicial officer would under the circumstances, if it ignores controlling facts or relies on unproven

4

factual representations, or if it acts outside the legal framework appropriate to the issue." *In re M.S.*, 56 Kan. App. 2d 1247, 1264, 447 P.3d 994 (2019).

*Clear and convincing evidence supported the district court's findings that Father was presently and foreseeably unfit.*

After the termination hearing, the district court found Father presently and foreseeably unfit to parent his children. The court based its ruling on the factors outlined in K.S.A. 38-2269(b) and, because the children were out of the home, it also based its ruling on some of the factors in K.S.A. 38-2269(c). While Father states the evidence does not support a present finding of unfitness, his arguments and requested relief appear focused on the court's foreseeability finding. That is, Father says he "is likely to be able to change his circumstances within the foreseeable future and therefore should be given a chance to reintegrate with his children." Even so, given the importance of the rights at stake, we will analyze both present and future unfitness findings by the court.

> 1. *K.S.A. 38-2269(b)(3)—use of intoxicating liquors or narcotic or dangerous drugs of such duration or nature as to render the parent unable to care for the ongoing physical, mental, or emotional needs of the child*

One of the factors on which the district court based its termination decision was Father's continuing use of illegal drugs throughout this case, which prevented him from making reasonable efforts to parent his children. Father argues this finding was unsupported by the evidence because he claims his drug testing was contradictory and inconclusive. He also submits that he completed drug treatment twice, which shows he addressed this issue.

But Father's argument paints an incomplete picture of the basis for the district court's decision. Although Father completed two in patient drug treatment programs in the first four months the case was pending, he was expelled from both sober living

programs he entered after he finished that treatment. And he continued to struggle with drug addiction throughout the remainder of the case.

As for his assertion that his drug testing "was contradictory and therefore inconclusive," Father provides no record citations to support this claim or explain its meaning. The record shows Father submitted negative drug tests in May and October 2024, but he tested positive for fentanyl in April 2024 and buprenorphine in June 2024. Additionally, two of the four times Father violated his probation during the CINC case was for testing positive for drugs—fentanyl and methamphetamines. And, in November 2024, his probation was revoked because he possessed a device designed to alter the results of a urinalysis test and he failed to submit drug tests on November 2 and November 5.

Father was incarcerated on felony drug charges when the CINC case began, and he remained incarcerated throughout most of the case because of his inability to remain drug free. This record provided the district court sufficient grounds for finding that Father was presently and foreseeably unfit to parent his children due to his drug use. As a result, the district court did not err in determining this factor supported termination of Father's parental rights.

2. *K.S.A. 38-2269(b)(5)—conviction of a felony and imprisonment*

As this court has acknowledged before, "incarceration does not necessarily result in an automatic and exclusive basis for an unfitness finding." *In re T.H.*, 60 Kan. App. 2d 536, 548, 494 P.3d 851 (2021). That is, incarceration can be a mitigating or a negative factor in the parent's continued ability to parent their child, and the facts of each case dictate how the court should view a parent's incarceration. 60 Kan. App. 2d at 548. In some situations, "[i]f an imprisoned parent has made reasonable attempts to contact and maintain an ongoing relationship with his or her children, it is for the trial court to

determine the sufficiency of such efforts." *In re Adoption of F.A.R.*, 242 Kan. 231, 236, 747 P.2d 145 (1987).

Here, the district court noted that Father was in custody when the CINC case began and failed to remain out of custody most of the case. It pointed out that had Father successfully completed his probation, he would have remained out of custody and been able to care for his children. It also noted that Father testified that he knew what he needed to do to regain custody of his children, yet he failed to remain out of custody so he could accomplish this goal.

Father admits he was in jail or prison for most of the year the CINC case was pending, including at the time of the termination hearing in January 2025. And he does not contest his felony conviction. Instead, he points out that he expected to be released from prison on April 10, 2025. He argues that he would be able to properly care for the children upon his release.

As the children's guardian ad litem notes, this court held in *In re A.M.*, No. 128,125, 2025 WL 1010685, at *7 (Kan. App. 2025) (unpublished opinion) (quoting *In re M.H.*, 50 Kan. App. 2d at 1172), that incarceration may be considered as a significant factor for parental termination where the parent has been incarcerated for the majority of the child's life, the child spent time in the State's custody, and the incarceration would cause delays in the proceedings. While the parent's incarceration in *In re A.M.* was more extensive, the fact remains that Father's ability to parent or reintegrate with his children has been constrained by his repeated incarceration. While incarcerated, he was unable to schedule visits with his children or complete his case plan tasks.

Although Father argues he would be able to care for his children upon release, he fails to point to any meaningful evidence to support this assertion. He never lived on his

own during the CINC case. And once released from jail in April 2025, he testified that he would "[m]ost likely" live with his Father, but did not have the address. He also admits the case worker estimated that, even if Father successfully completed all of his assigned case plan tasks upon his release, it would take him at least six months to do so since he had completed none so far.

Given Father's repeated incarcerations during the CINC case, his history does not suggest he would be capable of remaining out of custody or providing any stability for his children in the foreseeable future. Under these circumstances, the district court's finding that Father was presently and foreseeably unfit by reason of his incarceration is supported by clear and convincing evidence, and the court appropriately relied on this factor in terminating his parental rights.

> 3. *K.S.A. 38-2269(b)(7)—failure of reasonable efforts by appropriate public or private agencies to rehabilitate the family; K.S.A. 38-2269(b)(8)—lack of effort on the part of the parent to adjust the parent's circumstances, conduct, or conditions to meet the needs of the children; and K.S.A. 38-2269(c)(3)—failure to carry out a reasonable plan approved by the court directed towards integration of the children into a parental home*

Since the evidence supporting these factors overlaps, we will address them together. And while Father does not directly address these reasons for the district court's termination decision, he makes some general assertions that we assume are directed towards them. First, he maintains the case workers prevented him from seeing his children while the case was pending. He also contends that (1) he attended case plan meetings; (2) he was employed while out of jail; (3) he planned to work for his dad's business after being released from prison; and (4) he completed drug and alcohol treatment twice. Even so, the record contains other evidence which is clear and convincing and supports the court's findings on these factors.

The district court found that Father failed to make reasonable efforts to succeed in his parenting plan and noted how "[t]he purpose of reasonable efforts [is] to provide a parent [with an] opportunity to succeed—but [the] parent has to exert some effort." It noted how Father failed to change his conduct to be there for his children by having his probation repeatedly revoked and failing to complete the programs set out for him. And it was Father's failure to remain drug free and out of custody that prevented his contact with the children and his ability to make progress on his case plan tasks.

Although Father attended the initial case plan meeting, he did not complete the tasks set out in his case plans. The record shows the case worker provided him with referrals for tasks to complete while he was in and out of custody, which he failed to avail himself of. And even if he had been given another chance to do so, it still would have been at least nine months, once his additional time in custody is considered along with the case worker's estimate, before he could have completed the tasks.

While Father claimed at the hearing he had worked for his dad setting modular homes when he was not incarcerated, he did not report that to the case worker. And, again, the success of his drug and alcohol treatment was fleeting since he was expelled from two sober living programs and continued to test positive for drugs during the CINC case.

Given this record, there was clear and convincing evidence to support the district court's findings under these factors.

Although the district court found other factors supported its termination decision, we need not consider those factors since only one is necessary. See K.S.A. 38-2269(f). We therefore find clear and convincing evidence to support the district court's decision to terminate Father's parental rights under K.S.A. 38-2269(b)(3), (b)(5), (b)(7), (b)(8), and (c)(3).

4. *Best interests of the children*

Although Father does not challenge the district court's findings that termination of Father's parental rights was in the best interests of the children, we do not find that the court abused its discretion in making that decision. As the court explained, the children deserve permanency, stability, and consistency. And the case worker testified that the children were doing wonderfully in their placement with their grandparents. Children experience the passage of time in a way that makes a month or a year seem considerably longer than it would for an adult, and that difference in perception typically tilts toward a prompt, permanent disposition. See K.S.A. 38-2201(b)(4); *In re M.B.*, 39 Kan. App. 2d at 45. Given Father's inability to take meaningful steps to address his drug addiction during the case, it cannot be said that no reasonable person would agree with the district court's findings.

Affirmed.