NOT DESIGNATED FOR PUBLICATION

No. 129,087

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

In the Interest of L.C., a Minor Child.

MEMORANDUM OPINION

Appeal from Geary District Court; AMY CRAWFORD-COPPOLA, magistrate judge. Submitted without oral argument. Opinion filed December 12, 2025. Affirmed.

*Laura E. Poschen*, of Poschen Law, LLC, of Wichita, for appellant natural mother.

*Krista Blaisdell*, county attorney, for appellee.

Before CLINE, P.J., BRUNS and COBLE, JJ.

PER CURIAM: Mother appeals the termination of her rights to parent her child, L.C., after L.C. was designated as a child in need of care (CINC). Mother claims that insufficient evidence supports the district court's findings of unfitness and that termination is not in L.C.'s best interests. Based on our review of the record, we find no error and affirm the court's termination decision.

FACTUAL AND PROCEDURAL BACKGROUND

L.C. and his sister S.L. were placed in protective custody after the police discovered fentanyl, methamphetamine, and other drugs and paraphernalia in Mother's home. Mother and her boyfriend were arrested and charged with child endangerment and drug possession. Once taken into custody, it was discovered that L.C. suffered from poor

1

dental hygiene that needed to be addressed by a specialist. There were also concerns about physical abuse by Mother's boyfriend.

The State filed a petition on June 1, 2023, to adjudicate L.C. as a child in need of care. Almost eight weeks later, on July 26, 2023, Mother entered a no contest statement to the allegations in the petition. The district court found L.C. to be a child in need of care and approved a reintegration plan that contained several goals for Mother to complete, designed to reintegrate her with L.C. The target date for completion of this plan was December 8, 2023.

In August 2023, Mother overdosed on fentanyl and was hospitalized. After that, she entered a 28-day in-patient rehabilitation. A second case plan was made on December 6, 2023, with similar requirements as the first, but it added a drug evaluation because of her overdose. The second plan had a target completion date of May 24, 2024.

During November 2023, Mother relapsed and tested positive for alcohol, fentanyl, and methamphetamine. Then again in December 2023, Mother tested positive for methamphetamines. In addition to her drug use, Mother was scheduled for a defibrillator placement in January 2024. Mother continued to have positive drug tests between December 2023 and July 2024, but this time most of the tests were positive for either benzodiazepines or oxycodone. Mother also had some negative test results during this time.

As of February 7, 2024, L.C. was living with his paternal grandmother. L.C. was reported as doing very well under her care. The case team noted Mother was sensitive to L.C.'s needs during her visits with him and that she really loved him. But it also noted Mother admitted she was still using drugs and she had yet to complete a second drug and alcohol intake after her relapse. As for Mother's physical health, the case team noted Mother had several health concerns, including congestive heart failure that prevented her

from working. As of April 3, 2024, Mother had been unable to advance beyond supervised visits with L.C., limited to one hour per week, and she continued to fail random drug tests.

On April 26, 2024, the State moved to terminate both parents' parental rights. By the termination hearing in October 2024, Mother had pled guilty to fentanyl distribution and was incarcerated with a potential release date in 2027. Before Mother was incarcerated, she claimed that she had been using fentanyl approximately 10 to 12 times a day and that the last time she used it was on the day of her arrest, August 15, 2024. She also reported using methamphetamine two to three times per week up to June 2024.

L.C.'s biological father, who was incarcerated, relinquished his parental rights. So the evidence at the hearing focused on Mother. The case manager, who had overseen the case since L.C. was admitted into protective custody, testified about Mother's efforts. She acknowledged that Mother had completed parenting classes but pointed out her failure to complete several other case plan tasks, including obtaining a mental health evaluation and a second drug and alcohol evaluation. In the case manager's opinion, reunification was not achievable and it was in L.C.'s best interests to continue his placement with his paternal grandmother.

Mother also testified. She explained how she had been making progress towards sobriety in jail, including receiving a job offer, completing NA/AA meetings, attending church, and participating in choir. Mother said she did not consider herself to have a drug problem because she realized she needed to improve her health. She wanted to make sure she could be healthy and sober for her kids. When asked about her health problems she explained she has congestive heart failure and stage 4 cirrhosis of the liver and is hypokalemic, but claimed she is stable now. Mother said she wanted to be in L.C.'s life and have stability once she was released.

The district court ultimately decided to terminate Mother's parental rights. It found clear and convincing evidence that Mother was presently unfit and unfit for the foreseeable future due to her drug use, incarceration, and inability to complete a case plan. The district court also found termination was in L.C.'s best interests because L.C. should not have to wait for Mother any longer.

Mother timely appeals.

REVIEW OF MOTHER'S APPELLATE CHALLENGES

I. *The district court did not err in terminating Mother's parental rights because the State met its burden of clear and convincing evidence in showing Mother was presently unfit and that she would remain unfit for the foreseeable future.*

Mother contends clear and convincing evidence does not support the district court's findings because: (1) Mother completed remedial measures to address her drug problem before her incarceration and continued to participate in drug treatment while incarcerated; (2) Mother's incarceration is not an automatic and exclusive basis for a court's finding of unfitness in the foreseeable future; and (3) the evidence did not show Mother failed to adjust her circumstances or to follow through with a reasonable integration plan.

*Standard of Review and Relevant Legal Framework*

A person has a constitutionally recognized right to a parental relationship with their child. See *In re B.D.-Y.*, 286 Kan. 686, 697-98, 187 P.3d 594 (2008). Accordingly, the State may extinguish the legal bond between a parent and child only upon clear and convincing proof of parental unfitness. K.S.A. 38-2269(a); *In re R.S.*, 50 Kan. App. 2d 1105, Syl. ¶ 1, 336 P.3d 903 (2014). The Legislature has enacted the Revised Kansas Code for Care of Children, K.S.A. 38-2201 et seq., to codify processes for finding

4

children in need of care, for fostering family reunification, and for terminating parental rights if those efforts fail.

After a child has been adjudicated in need of care, a district court may terminate parental rights "when the court finds by clear and convincing evidence that the parent is unfit by reason of conduct or condition which renders the parent unable to care properly for a child and the conduct or condition is unlikely to change in the foreseeable future." K.S.A. 38-2269(a). In considering a parent's unfitness, the district court may apply the factors outlined in K.S.A. 38-2269(b) and, when the child has been removed from the home, the other factors in K.S.A. 38-2269(c). In this case, the district court drew from both of those sources to find Mother unfit. A single factor may be sufficient to establish unfitness. See K.S.A. 38-2269(f).

In gauging the likelihood of change in the foreseeable future under K.S.A. 38-2269(a), the courts should use "child time" as the measure. As the Code recognizes, children experience the passage of time in a way that makes a month or a year seem considerably longer than it would for an adult, and that difference in perception typically tilts toward a prompt, permanent disposition. K.S.A. 38-2201(b)(4); *In re M.B.*, 39 Kan. App. 2d 31, 45, 176 P.3d 977 (2008).

When the sufficiency of the evidence supporting a decision to terminate parental rights is challenged, an appellate court will uphold the decision if, after reviewing the record evidence in a light most favorable to the State as the prevailing party, the district court's findings on unfitness and foreseeability of change are supported by clear and convincing evidence. Stated another way, the appellate court must be persuaded that a rational factfinder could have found it highly probable that the circumstances warrant the termination of parental rights. *In re B.D.-Y.*, 286 Kan. at 705. In evaluating the record, the appellate court does not weigh conflicting evidence, assess the credibility of witnesses, or

determine factual questions. *In re Adoption of B.B.M.*, 290 Kan. 236, 244, 224 P.3d 1168 (2010); *In re M.H.*, 50 Kan. App. 2d 1162, 1170, 337 P.3d 711 (2014).

> *There was clear and convincing evidence to support the district court's findings under K.S.A. 38-2269(b)'s unfitness factors.*

On appeal, Mother first argues clear and convincing evidence does not support that she is presently unfit or would remain unfit in the foreseeable future. She argues that the use of intoxicating liquors or narcotic or dangerous drugs are not of such duration or nature to render her unable to care for the ongoing physical, mental, or emotional needs of L.C. Second, Mother claims she is not unfit for the foreseeable future even though she pled guilty to a felony charge and she was incarcerated at the time of the termination hearing. Third, Mother contends clear and convincing evidence does not support a finding that she is unfit through a lack of effort on her part to adjust her circumstances, conduct, or conditions to meet the needs of L.C., or that she failed to carry out a reasonable plan approved by the court directed towards the integration of L.C. into a parental home.

> 1. *Clear and convincing evidence supports a finding that Mother is presently unfit and would remain unfit in the foreseeable future for using intoxicating liquors or narcotic or dangerous drugs of such duration or nature to render her unable to care for the ongoing physical, mental, or emotional needs of L.C.*

K.S.A. 38-2269(b)(3) considers "the use of intoxicating liquors or narcotic or dangerous drugs of such duration or nature as to render the parent unable to care for the ongoing physical, mental or emotional needs of the child." The district court found this to be one of the factors supporting Mother's unfitness to parent L.C.

Mother contends clear and convincing evidence does not support an unfitness finding based on the use of intoxicating liquors or drugs because she completed remedial

measures before incarceration, including inpatient and outpatient treatment, and continued to participate in treatment after incarceration. Mother admits that she struggled with drug addiction since the start of this case. Even so, she points out that L.C. tested negative for drugs after he was removed from her home. Mother also contends that she had a sober test result in January 2024, and before she was incarcerated, she engaged in drug and alcohol outpatient treatment. And Mother claims her positive drug tests through July 8, 2024, were for drugs she was prescribed for her various medical conditions.

To support her argument, Mother cites *In re S.B.*, No. 120,362, 2019 WL 2479456, at *11 (Kan. App. 2019) (unpublished opinion), for the proposition that termination under this factor requires evidence that her drug condition rendered her unable to properly care for L.C. Mother also cites *In re L.D.*, No. 119,613, 2019 WL 257979 (Kan. App. 2019) (unpublished opinion). Mother likens her case to *In re L.D.* in that she took steps before her incarceration to address her drug abuse.

In *In re L.D.*, this court acknowledged that the reasoning of "once a drug abuser, always a drug abuser" is a backwards rationale and is not always the case. 2019 WL 257979, at *5. The court determined that the district court erred by finding that the drug use would continue because the mother had taken steps to complete an inpatient treatment program and showed an ability to take steps forward in her recovery. 2019 WL 257979, at *4-5. The court explained how this time it "was not a situation in which a child had been removed from a parent and remained separated for an extended period because of the real risk of emotional or physical harm, thereby preventing or unraveling any positive bonding." 2019 WL 257979, at *5.

As the State points out here, Mother did not, however, provide a stable living environment for L.C. and could not properly care for him due to her drug use. Before entering placement, at the time Mother was using, L.C. suffered from poor dental hygiene under Mother's care. It was also alleged that L.C. was "'whipp[ed]'" by Mother's

7

boyfriend before Mother and her boyfriend were arrested for child endangerment and drug possession. And at the time of the termination, Mother had already been away from L.C. for 16 months and was facing an additional incarceration for three years due to her fentanyl distribution sentence.

The State also points out how Mother's case is unlike *In re L.D.* because Mother did not have L.C. with her during the pendency of her case and did not make a showing she was fit to parent L.C. And the State submits Mother did not show she could remain drug free.

The evidence here supports the State's position and the district court's finding. Mother did complete a drug and alcohol evaluation in March 2024, but she failed to start her outpatient treatment program. And even months later, in July 2024, she still had not yet completed her drug treatment program. Before she was incarcerated in August 2024, she claimed that she had been using fentanyl approximately 10 to 12 times a day and that the last time she used it was on the day of her arrest, August 15, 2024. She also reported using methamphetamine two to three times per week up to June 2024. And even though Mother had a prescription for benzodiazepines and oxycodone, the case manager testified, "At points in the case she had prescriptions for medications and at other points she openly admitted to taking non-prescribed medication."

While Mother has taken steps towards sobriety, she did not take these steps until being incarcerated. In other words, sustained progress in addressing her drug addiction was not taken until she went to jail. Mother continued to use fentanyl and methamphetamine after L.C. was designated as a child in need of care. Without the confines and structure of prison, Mother did not follow through with drug treatment programs.

While Mother's attempts to battle her addiction are to be applauded, the drug and alcohol assessment she received in prison demonstrates she has not yet conquered this problem. The assessor rated Mother's "Relapse, Continued Use, or Continued Problem Potential" as "severe" because Mother reported she still experienced cravings, primarily triggered by her chronic pain. Mother also reported she "has not dealt positively with her cravings and has continued to use while in the community," suggesting that Mother would continue to struggle with her addiction outside the confines of prison.

Given these circumstances, the district court's finding that Mother has only been sober since being incarcerated along with the other evidence that her use of narcotics or dangerous drugs was of such duration or nature that it rendered her unable to care for the ongoing physical, mental, or emotional needs of L.C. was supported by clear and convincing evidence.

### 2. *Under K.S.A. 38-2269(b)(5), Mother is presently and for the foreseeable future unfit based on her incarceration for a felony charge.*

Kansas statutes provide that a district court may make a finding of unfitness if there is clear and convincing evidence that the parent has been convicted of a felony and imprisoned for that conviction. K.S.A. 38-2269(b)(5). But as this court has acknowledged before, "incarceration does not necessarily result in an automatic and exclusive basis for an unfitness finding." *In re T.H.*, 60 Kan. App. 2d 536, 548, 494 P.3d 851 (2021). That is, incarceration can be a mitigating or a negative factor in the parent's continued ability to parent their child, and the facts of each case dictate how the court should view a parent's incarceration. 60 Kan. App. 2d at 548. In some situations, "[i]f an imprisoned parent has made reasonable attempts to contact and maintain an ongoing relationship with his or her children, it is for the trial court to determine the sufficiency of such efforts." *In re Adoption of F.A.R.*, 242 Kan. 231, 236, 747 P.2d 145 (1987).

Here, Mother contends neither her felony conviction nor the time left under her sentence automatically constitute unfitness. Mother tries to liken her situation to the father's situation in *In re T.H.* The father in *In re T.H.* financially supported the child before and after incarceration and had participated in reintegration. The father also communicated with the child through prison protocols. This court found these facts did not support a finding of unfitness. 60 Kan. App. 2d at 551-53.

Mother, here, compares bringing snacks and having positive supervised visits with L.C. before her incarceration to the efforts by the father in *In re T.H.* And she points out how she has engaged in phone calls with L.C. while in prison. She contends her strong bond with L.C. along with these facts do not support a finding of clear and convincing evidence of unfitness for the foreseeable future under this factor.

Mother, however, overlooks a few things.

First, the case manager testified that in her opinion reunification was not achievable, and she has the same concerns about reintegration after Mother's imprisonment. Second, unlike the father in *In re T.H.*, Mother is unable to financially support L.C. while in prison. Instead, it is L.C.'s paternal grandmother who has been providing him with a stable and supportive environment. Lastly, Mother's phone calls in prison to L.C. are allotted for 30 minutes, but L.C. "typically engages for about 15 minutes before choosing to focus on other activities, as he is not particularly fond of long phone conversations."

In isolation the facts Mother points to suggest that she is committed to staying a part of L.C.'s life while she is in prison. But the district court did not only view the facts Mother submits. The district court considered testimony at the termination hearing including the case manager stating that she did not think reunification would occur after imprisonment. Mother also testified, "As of right now I know that I am incarcerated so I

cannot be there for my son and give him a stable living at this moment." Considering the record, there is clear and convincing evidence to support a finding that Mother was presently unfit because of her incarceration and that she was unfit for the foreseeable future too. The district court did not use her incarceration as the sole reason for her unfitness in terminating her rights, but it considered this fact along with other circumstances. As a result, the district court did not err in finding Mother was unfit due to her conviction of a felony and imprisonment.

> 3. *Clear and convincing evidence supports a finding that Mother is unfit through a lack of effort on her part to adjust her circumstances, conduct, or conditions to meet the needs of L.C., and she failed to carry out a reasonable plan approved by the court directed towards the integration of L.C. into a parental home.*

K.S.A. 38-2269(b)(8) considers "lack of effort on the part of the parent to adjust the parent's circumstances, conduct or conditions to meet the needs of the child." And K.S.A. 38-2269(b)(9) considers

> "whether, as a result of the actions or inactions attributable to the parent and one or more of the factors listed in subsection (c) apply, the child has been in the custody of the secretary and placed with neither parent for 15 of the most recent 22 months beginning 60 days after the date on which a child in the secretary's custody was removed from the child's home."

The district court found these to be two additional factors supporting Mother's present and future unfitness.

Mother submits the record does not support a finding that she failed to adjust her circumstances or to follow through with a reasonable reintegration plan. Mother explains how at the time of the termination hearing, the evidence showed she made progress on

11

the case plan. To name a few, she completed drug and alcohol evaluations, random drug tests, parenting classes, and had maintained steady housing with her mother.

Mother also explains how she communicated to the case manager about having trouble transporting herself to the second drug and alcohol evaluation because of not having a car or gas to get there. She admits she failed to complete this item on her reintegration plan. Even so, she contends the evidence does not support that she continued to use drugs during the pendency of the CINC case. She maintains she "reported a sobriety date of January 2024," and the positive test results after this were from prescribed medication. She notes how she struggled with her health, including being hospitalized for severe health conditions, and the agency ignored her medical prognosis by not understanding that she had been prescribed benzodiazepine and oxycodone.

From all this, Mother claims she showed consistency, stability, and a commitment to work towards sobriety and continued to visit with L.C. This means, according to Mother, the State failed to provide clear and convincing evidence that she lacked effort on her part to adjust her circumstances, conduct, or conditions to meet the needs of the child.

Like the last factor, Mother overlooks a few things and does not place the facts within the proper context. That is, while she technically completed some of her case plan tasks, she was ultimately unsuccessful when considering the purpose of those tasks. For example, although she completed inpatient treatment, she relapsed and continued using drugs until her incarceration in August 2024. She participated in random drug tests, but continued to test positive for drugs. And even accepting Mother's testimony over the case manager's—that her positive results were triggered by prescription medication—this ignores her admissions that she was using illicit drugs until her arrest.

Taken together within the context of the whole case, these facts provide clear and convincing evidence Mother is presently unfit because she failed to complete her reintegration plan by continuing to use drugs and she did not take steps towards providing a stable environment for L.C.

In addition to the present unfitness, the State contends these facts also support future unfitness. Mother, however, maintains that she demonstrated the requisite effort necessary to show things would be different in the future after incarceration.

The State reminds us how children have a different perception of time. Children experience the passage of time in a way that makes a month or a year seem considerably longer than it would for an adult, and that difference in perception typically tilts toward a prompt, permanent disposition. K.S.A. 38-2201(b)(4); *In re M.B.*, 39 Kan. App. 2d at 45. As the State points out, Mother's delay and inaction in failing to take meaningful steps to change her behavior—like completing outpatient treatment—before being incarcerated demonstrates she may have complications after her time in prison. And the results of Mother's drug and alcohol assessment in prison support that concern. When considering her previous relapses in addition to the time she will be away from L.C., it is unlikely given the record that Mother would be foreseeably fit in the future. Thus, the district court did not err in finding clear and convincing evidence existed to support unfitness continuing for the foreseeable future.

*Conclusion*

While Mother's efforts to turn her life around in prison are commendable, the culmination of Mother's lack of sustained efforts during the CINC case, her current condition, and evidence about the uncertainty that Mother can remain drug free after incarceration, provide clear and convincing evidence that she is presently and for the

foreseeable future unfit. Thus, the district court did not err in relying on these factors to support its termination decision.

II. *The district court erred in finding that alternatively K.S.A. 38-2271(a)(6)(A) applies to Mother's case.*

K.S.A. 38-2271(a)(6)(A) creates a presumption of parental unfitness if the child has been in an out-of-home placement, under court order for a cumulative total of two years or longer. When the district court made its oral pronouncement terminating Mother's parental rights at the hearing, it did not rely on this presumption to support its findings. Instead, the district court focused its analysis on the K.S.A. 38-2269 factors. In the written journal entry, however, it stated: "The Court finds that the mother is unfit pursuant to [K.S.A.] 38-2269(b)(3), (b)(5), (b)(8), (c)(3) as well as [K.S.A.] 38-2271(a)(6)(A)."

Mother argues the district court erred in applying the statutory presumption because L.C. was not in an out-of-home placement for two years or longer. Mother is correct. At the time of the termination hearing, on October 30, 2024, L.C. had been in out-of-home placement for 16 months.

The State submits the district court's mistake is irrelevant because the district court provided this as an additional ruling. In other words, the district court found Mother unfit under "[K.S.A.] 38-2269(b)(3), (b)(5), (b)(8), (c)(3) *as well as* [K.S.A.] 38-2271(a)(6)(A)." (Emphasis added.) A single factor may be sufficient to establish unfitness. See K.S.A. 38-2269(f). So even though the district court misapplied the presumption of unfitness in K.S.A. 38-2271(a)(6)(A), its ruling was supported by a basis independent of the application of the presumption. Therefore, Mother cannot show this mistake provides a basis to reverse the court's decision.

III. *The district court did not abuse its discretion when it found it was in L.C.'s best interests for Mother's parental rights to be terminated.*

Mother argues there is insufficient evidence to support the district court's finding that termination of her parental rights is in the best interests of L.C., and thus the district court abused its discretion in making its finding.

*Standard of Review and Relevant Legal Framework*

Upon making a finding of unfitness of the parent, "the court shall consider whether termination of parental rights as requested in the petition or motion is in the best interests of the child." K.S.A. 38-2269(g)(1). In making such a decision, the court shall give primary consideration to the physical, mental, and emotional health of the child. K.S.A. 38-2269(g)(1). A district court decides best interests based on a preponderance of the evidence. See *In re R.S.*, 50 Kan. App. 2d at 1115-16. But see *In re D.G.*, 319 Kan. 446, 463, 555 P.3d 719 (2024) (declining to decide whether clear and convincing standard or preponderance standard applies to best interests finding). The decision rests in the district court's sound judicial discretion. *In re R.S.*, 50 Kan. App. 2d at 1116. An appellate court reviews those sorts of conclusions for abuse of discretion. As this court has said: "A district court exceeds that broad latitude if it rules in a way no reasonable judicial officer would under the circumstances, if it ignores controlling facts or relies on unproven factual representations, or if it acts outside the legal framework appropriate to the issue." *In re M.S.*, 56 Kan. App. 2d 1247, 1264, 447 P.3d 994 (2019).

*The district court did not err in determining it was in L.C.'s best interests for Mother's parental rights to be terminated considering his situation.*

Mother asserts the district court should have appointed L.C.'s paternal grandmother as his permanent custodian rather than terminating Mother's parental rights. And she cites *In re K.P.*, 44 Kan. App. 2d 316, 321-23, 235 P.3d 1255 (2010), to show

where this court upheld the appointment of a permanent custodian for a child rather than terminate parental rights. There, the child lived with the mother since birth and established a strong bond, which persuaded the court to appoint the child's foster parents as permanent custodians rather than terminate the mother's parental rights.

The State, on the other hand, contends *In re K.P.* is distinguishable because even though L.C. was with Mother for the first six years of his life, L.C. had been in State custody and resided with his paternal grandmother since June 1, 2023. The State also points out because of Mother's prison sentence for distribution of fentanyl, she will be away in prison for at least a couple of years. Mother has also exhibited an inability to properly care for L.C., the State contends, because she has missed visits with L.C., and her medical condition has prevented her from traveling. In addition to these points, the State cites the record where the guardian ad litem found termination to be in the best interests of L.C. and stated, "I just cannot see that it's not in his best interest not to terminate mom's parental rights at this point."

While the State raises a fair point on the material differences between the two cases, it is ultimately immaterial. Just because the district court had another option does not mean that, under the circumstances, no reasonable person would agree with the option the court chose here. We review the court's best interests finding under an abuse of discretion standard, and Mother has not shown the court abused its discretion in terminating her rights.

In addition to this argument, Mother claims the termination of parental rights in this case is disproportionate to the outcome in S.L.'s case, L.C.'s sister. She claims the facts of this case were "identical" to S.L.'s case. Yet Mother claims that S.L. remains in the care of a family member—her father—and so Mother's parental rights to S.L. were not terminated.

Mother fails to provide any record citations to support her claims on this point. Even so, the State responds by pointing out that S.L.'s CINC case was dismissed before there was an adjudication because S.L.'s biological father was available to take custody of her. But L.C.'s father was incarcerated and voluntarily gave up his rights before the termination hearing. In light of this, the State contends a reasonable person would agree placing L.C. in the care of his paternal grandmother—rather than wait for Mother to return from prison without an indication she will be able to care for him—was in L.C.'s best interests.

All in all, the district court considered the facts before it and determined that it was in L.C.'s best interests to terminate Mother's parental rights. Given Mother's medical conditions, her drug use, L.C.'s bond with his paternal grandmother, the paternal grandmother's care for L.C., the guardian ad litem's recommendation, and Mother's inability to support L.C. in the coming years, it cannot be said no reasonable person would agree with the district court's finding. Thus, we find the district court did not abuse its discretion.

Affirmed.